## Supreme Court, First Department.

February, 1897.

## PEOPLE v. MAX H. KAUFMAN.

1. INDICTMENT—OBSCENE LITERATURE.

It is not necessary to set out matter in an indictment, which the grand jury asserts to be too obscene for recital. It is only necessary to identify the obscene book or publication sufficiently to apprise the defendant of what particular book or publication is intended, giving as an excuse for

not setting forth the obscene matter that it is so gross as to be offensive.to the court and improper to be placed upon its records.

2. SAME.

If anything more is requisite for the protection of the defendant's rights, it may be left to the discretion of the court to compel the public prosecutor to furnish such further information or specification as may be needful.

3. SAME.

A person, indicted for selling an obscene book, cannot be convicted upon proof that he purchased the book for another person.

4. SAME—INSTRUCTIONS.

Where the court merely charges that, if defendant sold the obscene book, he was guilty, and if he did not, he was innocent, without referring to defendant's statement that the person to whom he delivered the book gave him the money to go out and buy it, a refusal to charge that, if defendant's testimony was true, there was no sale, is erroneous.

Appeal from a judgment of the court of general sessions of the peace in and for the city and county of New York, convicting him of a misdemeanor, and also from an order entered in the office of the clerk of said court, denying the defendant's motion for a new trial.

Samuel F. Hyman, for the appellant.

John D. Lindsay, for the respondent.

BARRETT, J.—The defendant was convicted under section 317 of the Penal Code of the misdemeanor of selling an obscene book. He makes two points upon this appeal, First, that the indictment failed to charge a crime; and, second, that the trial judge erred in refusing to instruct the jury upon a crucial question.

The particular objection which he makes to the indictment is, that it fails to state the obscene matter, but merely gives the pleader's conclusions therefrom. The indictment, however, states the name of the book, and excuses a statement of the obscene matter by distinctly averring that the book is so obscene, lewd, lascivious, filthy, indecent and disgusting that the same would be offensive to the court, and improper to be placed upon the records thereof. "Wherefore," it is added, "the grand jury aforesaid do not set forth the same in the indictment."

The current of authority in this country favors an exception to the general rule of pleading in this class of offenses. It may now fairly be said to be the settled American rule that it is not necessary to set out matter in an indictment which the grand jury asserts to be too obscene for recital. It is only necessary to identify the obscene book or publication sufficiently to apprise the defendant of what particular book or publication is intended, and to aver its obscenity, giving as an excuse for not setting forth the obscene matter that it is so gross as to be offensive to the court and improper to be placed upon its records. (1 Bish. New Cr Proc. §§ 496, 561; Whart. Crim. Law, §§ 311, 2547; Comm. v. Holmes, 17 Mass. 336; Comm. v. Sharpless, 2 S. & R. 91; People v. Girardin, 1 Mann. [Mich.] 90; State v. Brown, 27 Vt. 619; McNair v. The People, 89 Ill. 441; U. S. v. Clarke, 40 Fed. Rep. 325; State v. Smith, 17 R. I. 371.) A rigid adherence, in such cases, to the ordinary rule, that it must appear upon the face of the indictment that the printed matter was of the character charged, would, as was said in Comm. v. Holmes (supra) "require that the public should give permanency and notoriety to indency in order to punish it." Courts will not allow their records to be polluted by obscene matter. "To do this," observed the court in People v. Girardin (supra), "would be to require a court of justice to perpetuate and give notoriety to an indecent publication before its author could be visited for the great wrong he may have done to the public or to individuals."

By the American doctrine and practice on this head, as Mr. Bishop points out, the avoiding of obscene allegation in the record, breeding corruption, *is a necessity,* excusing the setting out of the words. It is claimed, however, that the obscene matter should have been described, at least in general terms. The answer to this is, that if the matter is too obscene to be set out, it is also too obscene to be properly described. An accurate description of obscene matter, however general, would itself be obscene. Nothing would be gained by condensation. How, indeed, can obscenity be condensed so as to be descriptive and yet sufficiently decent to be placed upon record? We refer now to such a description as would enable the court, upon the face of the indictment, to

determine whether the book or publication is, in fact, obscene. Any merely general description would not be a description at all— that is, of the obscene words or matter. A mere description, for instance, of the subject matter—of what, in general, the book is about—would not be a description of the actual obscenity charged. It would not apprise the defendant of the particular facts upon which the charge is based. It would simply be a means of identifying the book or publication; and that is as well, if not better, effected by stating its title. In none of the cases which have been referred to, with the possible exception of *Comm.* v. *Sharpless*, did the indictment contain a description, either minute or general, of the nature of the obscenity, and in none of them was a descriptive statement of the obscene matter required.

The rule to which we have referred is not in conflict with that laid down in *People* v. *Hallenbeck* (52 How. Pr. 502), and *People* v. *Danihy* (63 Hun, 579). In neither of these cases was the omission of obscene matter excused by the statement, in the indictment itself, that it was too gross to be placed upon record. We agree that, where this excuse is not made by the grand jury upon the face of the indictment, the obscene matter must be set out. Where, however, that excuse is thus made, we think the general rule should be modified in the interest of public decency; and the defendant must then be satisfied with such descriptive allegations as clearly identify the book or publication intended, together with the statement that the obscene matter which the grand jury deem too foul to be spread upon the record is contained therein. If anything more is require for the protection of the defendant's rights it may well be left to the direction of the court to compel the public prosecutor to furnish such further information or specification as may be needful. We think, therefore, that the indictment here was sufficient. We may add that it is quite evident that the defendant was not, as matter of fact, prejudiced by any omission therein. He did not demur thereto. Upon the trial he conceded that the book in question was obscene, and that he purchased it for, and delivered it to, the prosecuting witness Joel. Upon this very appeal, too, he stipulated that the book should not be printed, nor made part of the record, for the reason that it was " concededly obscene." We think the motion to acqui-

upon this point, and the motion in arrest of judgment, were properly denied.

We have, however, reached a different conclusion as to the defendant's second point. The sole question presented to the jury was whether or not the defendant sold the book. Joel testified to the sale, as alleged. The defendant denied it and testified that he purchased the book for Joel. This was the crucial question— was it a sale or a purchase? If a sale, the defendant was guilty. If a purchase, he was not. The learned trial judge left it to the jury to say whether there was or was not a sale. He pointed out to them very clearly the testimony upon which the prosecution rested; but the only reference which he made to the defendant's testimony was that he (the defendant) had the book, delivered it to the person who went to his shop to purchase (Joel) and received a dollar from that person for it. He omitted to refer to the defendant's statement that Joel gave him the dollar to go out and purchase the book. This omission is quite significant, in view of what occurred when the learned judge closed his charge. The following colloquy was then had: "The third juror: If the defendant sold that book merely as an agent should we convict? The Court: Certainly; if he sold it under any circumstances. The third juror: If he took the dollar and made no profit? The Court: It is not necessary for a profit to have been made. If he sold it in any way. Mr. Hyman (defendant's counsel): Do I understand your honor to say, if the defendant merely got it for the complainant? The Court: But he sold it. Mr. Hyman: If he merely got it for him? The Court: Where is the man from whom he got it? Mr. Hyman: We have been asked that question, and we don't know. The Court (continuing): We ask the defendant, and he does not know. Mr. Hyman: He does not know; therefore, he cannot be produced. The Court: If he sold the book and got a dollar for it, it is a violation of the law. If you, gentlemen of the jury, come to the conclusion he did not, then the defendant should be acquitted. Mr. Hyman: I ask your honor to charge the jury that if this defendant obtained this book, and parted with it in the manner testified—if the jury believe that the defendant received a dollar from this man Joel to get the book, that that is not a sale. The Court: Except as I have already

charged, I decline to charge upon the subject.    Mr. Hyman : We except.    The jury then retired."

It is apparent from all this that, after hearing the learned judge's charge, the third juror was still in doubt as to the precise issue to be passed upon by the jury.    It is equally apparent that the learned judge, inadvertently, of course, made an observation, " but he sold it," which, if taken seriously by the jury, would have probably concluded the question that they were called upon to consider.    The defendant's counsel sought to neutralize the effect of that observation by presenting the defendant's contention interrogatively.    The learned judge, however, parried the counsel's interrogation as to the law by some pointed observations upon the facts.    The conclusion of it all left the defendant without much hope, that is, unless, the learned judge should assent unreservedly to the final proposition which he was asked to charge.    We think, under the circumstances, that defendant was entitled to have that proposition specifically charged.    After what had occurred, a clear statement of the precise issue, and of the effect thereon of crediting the defendant's story, was the least that the defendant had a right to expect.    It will not do to say that the proposition in question had already been charged.    What the learned judge had already charged, and all that he had so charged, was that, if the defendant sold the book, he was guilty, and if he did not he was innocent.    But the defendant had a right to an instruction that his own testimony, which had seemingly been treated as valueless, was sufficient, if credited, to establish that there had been no sale.    From the confusion which have resulted from the previous colloquy, the jury could only have been relieved by the clear statement that procuring the book in the manner testified to by the defendandt was not a sale.

We are constrained, therefore, for this error to reverse the judgment and order a new trial.

VAN BRUNT, P. J., RUMSEY, WILLIAMS and PATTERSON, JJ., concurred.

Judgment reversed, and new trial ordered.