(51 App. Div. 57.)

## PEOPLE v. HALL.

(Supreme Court, Appellate Division, Fourth Department. April 24, 1900.)

1. CRIMINAL CONSPIRACY—EVIDENCE SHOWING PRIVITY—VERDICT.

In a prosecution for conspiracy to extort money, where the evidence does not show personal complicity of one of the defendants in obtaining the money, but does show his privity in the conspiracy, and that he received a portion of the money, and the evidence is such that a jury could find the existence of the conspiracy, the verdict will not be disturbed.

2. SAME—PUBLIC TRIAL—EXCLUSION OF SPECTATORS—DISCRETION OF COURT.

Code Cr. Proc. § 8, subd. 1, provides that a defendant is entitled to a speedy and public trial. Code Civ. Proc. § 5, declares that the sittings of all courts shall be public, and authorizes the court to exclude persons not directly interested therein in proceedings for divorce on account of adultery, seduction, abortion, rape, assault with intent to commit rape, criminal conversation, and bastardy. *Held* that, in a prosecution for conspiracy to extort money on the charge that one was guilty of sodomy, the court had discretion to exclude spectators from the court room.

3. SAME—EXERCISE OF DISCRETION.

Where a court has discretion to exclude persons from a trial of defendants for conspiracy in extorting money from complainant on the charge of sodomy, one of the defendants having had a separate trial, at which the evidence was revolting, on a trial of one other of the defendants it is no abuse of discretion to exclude all persons from the court room excepting such as defendant asked to be present.

4. SAME—COMMON DESIGN—STATEMENTS OF ORIGINAL CONSPIRATORS—EVIDENCE.

Where defendant is charged with conspiracy in extorting money from complainant on a certain date, evidence will be received of statements and transactions of the original conspirators made after that date, in furtherance of the common design after that date, where the design was a continuing one, and carried on after such date.

Appeal from Monroe county court.

William E. Hall was convicted of extorting money under a conspiracy, and from this conviction, and from an order denying a motion for a new trial, he appeals. Affirmed. See 49 N. Y. Supp. 158.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

George M. Williams, for appellant.
S. J. Warren, Dist. Atty., for the People.

SPRING, J. The defendant was indicted jointly with three others, but tried alone, charged with extorting $200 from Rev. Father Fidelis C. Oberholzer, on the 21st of June, 1897. The gravamen of the accusation is that three of the men indicted became acquainted with this Catholic priest, who had quite a sum of money laid by; that, after three or four meetings on unimportant matters, the present defendant and McIntyre professed they had caught him in a compromising attitude with the defendant Williams, and charged him with the disgusting crime of sodomy; that they unsuccessfully tried to extort from him a check for $2,500; that on that same evening, which was June 18th, by preconcerted arrangement, the defendant and Williams and McIntyre went to the residence of Oberholzer, and obtained $250 from him, and on June 21st $200. The

64 N.Y.S.—28

threats used from the first were a public exposure by the publication of his alleged crime in the newspapers. The weak old man, if his story be true, succumbed to these threats, and paid these sums of money, although repudiating the charge made. The indictment is based on the transaction of June 21st, and was originally against the three named and a Catholic priest named Fitzgerald. The defendant's proof showed that these sums of money were paid by Oberholzer, but the claim is that it was done voluntarily. It was contended on behalf of the people that the extortion of this money was the result of a conspiracy for that purpose entered into by the four defendants. There was no evidence showing any personal complicity of Fitzgerald in the actual obtaining of the money from the complainant, but there was evidence from which the jury might find the existence of this concerted plan to extort money from Oberholzer, and that Fitzgerald was privy to it, engaged with the others in its consummation, and received his share of the money extorted. Without further discussing the evidence, suffice it to say we are satisfied there is ample evidence in the record to uphold the verdict of the jury.

There had been one trial against McIntyre in the same court, and the county judge presiding knew the filthy character of the testimony which would be presented. After the jury had been secured, the court announced "that, on account of the character of the testimony which it is reasonable to expect from this case, persons who have no business before the court, or any connection with this case, will be excluded from the court room. I make no exceptions to this rule." Whereupon the counsel for the defendant asked if this order extended to representatives of the press, and the court said: "I see no reason why the account of this case should be published." The counsel for the defendant excepted, and asked for a public trial, "as prescribed by the constitution and the bill of rights and the Code, * * * and that any citizen who desires to attend the trial may do so so long as there is room for him in the court room." The following then occurred:

"The Court: If your client has some especial friend that he wishes to have sit by him during this trial, I have no objection to such person remaining in the court room; but the disgusting and revolting character of the testimony which was brought out on the last trial is such that the public good requires the exclusion of all spectators during the course of this trial, and the court takes the responsibility of keeping out the crowd. If there is any one you wish to have here as company for your client, that person may remain. Mr. Williams: I quite agree with your honor as to the crowd, but as to the press it seems to me that they should be admitted. I know of no provision which gives the court authority to make the order. The Court: I will assume the responsibility for the order; the sheriff will see that it is executed. (Exception taken by the defendant.) The Court: I hope there will be no misunderstanding about the intention of the court, or the right of the defendant to a public trial. If there is any person—any particular individual—you desire to have in the court room for the protection of your client's rights, the court has no intention of excluding any such person, but the indiscriminate multitude."

During the trial persons were admitted on the suggestions of the defendant's counsel, and the court made it plain that any people

the defendant desired to attend would not be excluded. The affidavits of the attendants disclosed that at all times during this trial, which occupied six days, there were from 10 to 50 persons present in the court room aside from the witnesses and those actually engaged in the trial. A part of the testimony adduced was reeking in its nastiness, and certainly, if the ruling of the court in excluding those who from morbid curiosity desired to be present is not in violation of law, it should be sustained, as it was in the interest of good morals and decency.

While the sixth amendment to the United States constitution provides that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury," yet it has been held that this amendment applies to the United States courts alone, and not to the laws of the state, and not in restriction of the powers of the state governments. In re Sawyer, 124 U. S. 200–219, 8 Sup. Ct. 482, 31 L. Ed. 402; Spies v. Illinois, 123 U. S. 131–166, 8 Sup. Ct. 21, 31 L. Ed. 80. But it has been embodied in the laws of each state as one of its fundamental provisions that a speedy and public trial shall be accorded to every person under indictment. Section 8 of the Code of Criminal Procedure, among other things, provides that "in a criminal action the defendant is entitled to a speedy and public trial"; and section 5 of the Code of Civil Procedure is as follows:

"The sittings of every court within this state shall be public, and every citizen may freely attend the same, except that in all proceedings and trials in cases for divorce, on account of adultery, seduction, abortion. rape, assault with intent to commit rape, criminal conversation and bastardy, the court may, in its discretion, exclude therefrom all persons who are not directly interested therein, excepting jurors, witnesses and officers of the court."

If a literal interpretation is to be given to these provisions, then the trial judge is utterly without any discretion whatever. Whoever desires to come into court, however revolting may be the evidence adduced, the doors must swing inward to him. School children, the street urchins, girls of immature years, may drink in and become poisoned by the lustful details wormed from the witnesses. That the protection of a public trial must be given to every defendant charged with a crime is obvious. No court in this nation has ever held otherwise, so far as I am able to ascertain. That principle must be upheld unimpaired, but its retention does not entirely wrest from the trial judge the discretion to conduct the trial consonant with good morals, common decency, and in an orderly manner. If a man is maudlin drunk or a disturber of the decorum that should prevail, the court may order him to be ejected. Chrisfield v. Perine, 15 Hun, 200, affirmed in 81 N. Y. 622. If school children are in attendance, and the witness begins a recital of a lascivious story, the judge must have the right to exclude these children. A suggestion might accomplish it. If not, the power to expel them must exist. If the court does not possess that power, then it has no right to obtain the result by suggestion. It cannot gain by indirection what it lacks the authority to do directly. If

their exclusion is an interference with a legal or constitutional right of the defendant, the vice inheres whether the court room is vacated by the polite intimation of the presiding judge or by his peremptory order.

Courts and text writers have been prone to give a rigid interpretation to the necessity of a public trial, but it is patent they have not gone to the extent of wholly devesting the trial judge of an intelligent discretion where public decency demands it. Judge Cooley says in his work on Constitutional Limitations, at page 379 (6th Ed.):

"It is also requisite that the trial be public. By this is not meant that every person who sees fit shall in all cases be permitted to attend criminal trials, because there are many cases where, from the character of the charge and the nature of the evidence by which it is to be supported, the motives to attend the trial on the part of portions of the community would be of the worst character, and where a regard to public morals and public decency would require that, at least, the young be excluded from hearing and witnessing the evidences of human depravity which the trial must necessarily bring to light. The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with, and not unjustly condemned; and that the presence of interested spectators may keep his triors keenly alive to a sense of their responsibility and to the importance of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn thither by a prurient curiosity, are excluded altogether."

In Abb. Tr. Brief, Cr. § 157, the rule is thus stated:

"The exclusion by the court of all persons other than those interested in the case, where, from the character of the charge and the nature of the evidence, public morality would be injuriously affected, does not violate the right to a public trial."

See, also, section 156; Grimmett v. State, 22 Tex. App. 36, 2 S. W. 631; State v. Brooks, 92 Mo. 542, 5 S. W. 257, 330; Bish. New Cr. Proc. § 959.

The indictment is supposed to recite the facts constituting the crime of which the defendant is accused. If, however, the facts are revolting in their obscenity, they need not be set out in the indictment. People v. Kaufman, 14 App. Div. 305, 43 N. Y. Supp. 1046. Public policy requires their suppression, as far as may be consistent with the rights of the accused. Two things are ingrafted on our Criminal Code (subdivision 1, § 8) for the benefit of the defendant,—a "speedy trial" and a "public trial." To make effectual the former requirement, the court must necessarily exercise its discretion. What constitutes a "speedy trial" is not fixed by the statute in days or months. It depends upon the circumstances of each particular case. It is left with the court to determine whether that important right has been denied to the defendant. By parity of reasoning, the court must decide whether or not the defendant has been denied a "public trial." That is a term of some elasticity as well as the other. In a time of political or local excitement, if the trial judge permitted the court room to be packed exclusively with men opposed to the defendant on trial, the trial would not be public in fairness to the defendant. Every seat and all the stand-

ing room might be occupied, but the character of the spectators present, and the friendliness to the accused of those who failed to gain admittance, perhaps through the connivance of the court, are to be considered in deciding whether the rights of the defendant have been trampled upon. The exclusion of a dozen school girls or boys of no particular predeliction for the defendant on trial can work no harm to him. The statute is for his benefit, and such an expulsion does not harm or aid him. It is apparent, therefore, that, while the defendant is entitled to a "public trial," good morals or the exigencies of the situation may make that a relative term, without injury to the defendant, and without infringement upon the sanctity of the rights granted to him; that such discretion is vested in the presiding judge, and the test is whether or not it has been abused.

Again, section 5 of the Code of Civil Procedure, quoted above, distinctly gives the court power to exclude from the court room all persons "who are not directly interested therein, excepting jurors, witnesses, and officers of the court," in certain specified cases. It will be observed the cases enumerated are those in which the testimony is apt to be too indecent for the public to hear. They also include all those of that type which are tried in the courts, except in very infrequent instances. The object of these exceptions was in the interest of public morals, and the intent probably was to include all cases in which testimony of an obscene character was likely to be given. Careful as our lawmakers have always been of the rights of the defendant by this section, the court is expressly vested with the authority to exclude people generally from the trial. The present case is within the spirit of this statute. The reason that warrants the exclusion of the prying curiosity seekers in an action for divorce exists in this action.

The county judge had in mind the necessity of a public trial. He was insistent in stating that any friends of the defendant would be admitted or any one his counsel suggested. The reason for his order was again and again made plain,—that it was in consequence of the salacious details which were to be presented, and not with any view of hampering the defendant or creating sentiment adversely to him. We think he possessed a discretion, and exercised it wisely.

It is contended on behalf of the defendant that it was error to receive evidence of the transactions or statements of the original co-defendants occurring after June 21st. The evidence justifies the conclusion that these men were engaged jointly with a concerted purpose to filch money from the complainant. This did not relate solely to the specific offense set out in the indictment, but it was a continuing design to blackmail, and that was carried on after June 21st. It was during the execution of this fell purpose that the acts and declarations now complained of were done or uttered. It is elementary that the declarations of each conspirator is admissible against his confederates when they were made during the execution and in furtherance of their common design. 1 Greenl. Ev. (16th Ed.) par. 184; People v. Peckens, 153 N. Y. 576–595, 47 N. E. 883.

The extortion of the money charged in the indictment was one fact—one element—in the general purpose to wrest money from Oberholzer. These conspirators continued to carry out this purpose for several days, after the act of extortion which is the subject-matter of the indictment. Whatever they did, although after this specific offense during this period, is in the fulfillment of their design, and is admissible against each one who is proved to be a confederate. People v. Peckens, 153 N. Y. 594, 595, 47 N. E. 883; Card v. State, 109 Ind. 415–418, 9 N. E. 591; Abb. Tr. Brief, Cr. § 647. Fitzgerald's connection with the scheme is shown by abundant evidence, so that his letter comes within the rule stated. Seville v. State, 49 Ohio St. 117, 30 N. E. 621.

We have examined the other exceptions urged by the defendant's counsel, but do not deem them of sufficient importance to call for any separate discussion.

The judgment is affirmed. All concur.