## SUPREME COURT — SPECIAL TERM — NEW YORK.
### January, 1924.

## THE PEOPLE v. THOMAS SELTZER.

(122 Misc. 329.)

(1) OBSCENE BOOKS—PENAL LAW, § 1141—CONTENTS OF BOOK, NOT SET OUT IN INDICTMENT MAY BE CONSIDERED AS PART THEREOF.

The defendant by indictment was charged with a violation of section 1141 of the Penal Law in that on a day certain and for a considerable time prior thereto with intent to sell and show the same he was in unlawful possession of a certain obscene, lewd, lascivious, indecent and disgusting book entitled "Cassanova's Homecoming." *Held*, that the contents of the book, though not set forth in the indictment, might for all purposes be considered as a part thereof as if fully set forth therein.

(2) SAME—TEST APPLICABLE IN DETERMINING WHETHER BOOK OFFENDS LAW AGAINST OBSCENE PUBLICATIONS.

Upon demurrer to the indictment upon the ground that the facts stated did not constitute a crime, *held*, that an important but not the sole test to be applied in determining whether a book offends the law against obscene publications is, does the matter charged as obscene tend to deprave or corrupt those whose minds are open to immoral influences and who might come in contact with it, ever bearing in mind the consideration that the statute looks to the protection not of the mature and intelligent, with minds strengthened to withstand the influences of the prohibited data, but of the young and immature, the ignorant and sensually inclined.

(3) SAME.

Neither the book's adoption by another land nor the approval of

critics can be accepted by the court as conclusive of non-obscenity under the statute for being essentially an idealistic and spiritual nation, we exact a higher standard than some others, but aside from this viewpoint, the enforcement of the statute is of great materialistic concern to our government.

(4) SAME—WHEN DEMURRER TO INDICTMENT WILL BE OVERRULED, WITH LEAVE TO DEFENDANT TO WITHDRAW SAME AND PLEAD ANEW.

The view of the court, after reading the book, applying the principles of interpretation set forth in his opinion, being that the publication is of such a character that both parties to the action are entitled to the verdict of a jury as to its alleged tendency toward depravity and corruption of mind, the court refuses to hold, as matter of law, that the book does not offend the statute under which the indictment was drawn, and the demurrer will, therefore, be overruled, with leave to defendant to withdraw the same and plead to the indictment.

DEMURRER to an indictment.

*Joab H. Banton, District Attorney,* for People.

*Goldstein & Goldstein,* for defendant.

WAGNER, J.:

The defendant, Thomas Seltzer, stands indicted by the grand jury of this county charged with a violation of section 1141 of the Penal Law in unlawfully possessing an indecent book, committed as follows: " Said defendant, in the county of New York aforesaid, on the 22d day of June, 1923, and for a considerable time prior thereto, with intent to sell and show, unlawfully possessed a certain obscene, lewd, lascivious, indecent and disgusting book entitled ' Cassanova's Homecoming'."

The contents of the book itself are not set forth in the indictment, though for all purposes they may be considered as part of it and as fully set forth therein. People v. Kaufman, 14 App. Div. 305. The defendant demurs to this indictment upon the ground that the facts stated do not constitute a crime. Code Crim. Pro. § 323, subd. 4. The question, therefore, pre-

sented for my determination is, is the book in question as a matter of law not obscene? or, is the character of the book such that it raises a question as to its obscenity to be determined by the triers of fact? If the book as a matter of law is not obscene, the demurrer must be sustained; otherwise it must be overruled. The section claimed to have been violated by the defendant reads as follows:

" § 1141. Obscene prints and articles. 1. A person who sells, lends, gives away or shows, or offers to sell, lend, give away or show, or has in his possession with intent to sell, lend or give away, or to show or advertises in any manner, or who otherwise offers for loan, gift, sale or distribution, any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, story paper, writing, paper, picture, drawing, photograph, figure or image, or any written or printed matter of an indecent character; or any article or instrument of indecent or immoral use, or purporting to be for indecent or immoral use or purpose, or who designs, copies, draws, photographs, prints, utters, publishes, or in any manner manufactures or prepares any such book, picture, drawing, magazine, pamphlet, newspaper, story paper, writing, paper, figure, image, matter, article or thing, or who writes, prints, publishes or utters, or causes to be written, printed, published or uttered, any advertisement or notice of any kind, giving information, directly or indirectly, stating or purporting so to do, where, how, of whom or by what means any, or what purports to be any, obscene, lewd, lascivious, filthy, disgusting or indecent book, picture, writing, paper, figure, image, matter, article or thing named in this section can be purchased, obtained or had or who has in his possession any slot machine or other mechanical contrivance with moving pictures of nude or partly denuded female figures which pictures are lewd, obscene, indecent or immoral or other lewd, obscene, indecent or immoral drawing, image, article or object, or who shows, advertises or exhibits the same or causes the same to be shown, advertised or

exhibited, or who buys, owns or holds any such machine with the intent to show, advertise or in any manner exhibit the same; or who

" 2. Prints, utters, publishes, sells, lends, gives away or shows, or has in his possession with intent to sell, lend, give away or show, or otherwise offers for sale, loan, gift or distribution any book, pamphlet, magazine, newspaper or other printed paper devoted to the publication and principally made up of criminal news, police reports or accounts of criminal deeds, or pictures or stories of deeds of bloodshed, lust or crime; or who

" 3. In any manner hires, employs, uses or permits any minor or child to do or assist in doing any act or thing mentioned in this section or any of them,

" Is guilty of a misdemeanor, and upon conviction shall be sentenced to not less than ten days nor more than one year imprisonment or be fined not less than fifty dollars nor more than one thousand dollars or both fine and imprisonment for each offense."

That section does not attempt to define the meaning of the words " obscene " or " indecent " or the others set forth therein. It seems to me that such definitions would be entirely unnecessary, for these words are in common use, and their meaning is readily comprehended by men of ordinary intelligence. The difficulty that has arisen with respect to this section lies not in the particular test to be applied thereto in determining the question as to whether a particular book comes within its provisions or not, but in the misconception that there can be any judge-made or constant test at all established by way of formularization.

The defendant's counsel contends for the proposition that the statute is only directed against lewd, lascivious and salacious or obscene publications, " the tendency of which is to excite lustful and lecherous desires," quoting as his authority for that definition the learned opinion of the Appellate Division of this department in People v. Brainard, 192 App. Div. 816, and the

opinion of the Court of Appeals in People v. Eastman, 188 N. Y. 478. It is true that the prevailing opinion in the former case did state the above as the sole test of obscenity, and relied in obtaining that test upon a quotation in the latter case. People v. Eastman, supra, was a review by the Court of Appeals of a demurrer to an indictment charging the defendant with having published an "indecent" article in violation of section 317 of the Penal Code (now section 1141 of the Penal Law). The writing complained of was an intemperate, unjustifiable and highly reprehensible attack upon the clergy of a certain denomination by a bigot of distorted mind. The court in a *per curiam* opinion held that such an attack was not "indecent" within the purview and intendment of the section under which he was indicted. Hence, however criminally scurrilous the writing was, it was not obscene, and thus the offense did not fall within those enjoined by the above-mentioned statute. Chief Judge Cullen, writing a concurring opinion, in order, undoubtedly, to emphasize that the word "indecent" as employed in the section relates only to obscene literature and should not be given the meaning in ordinary conversation, stated that the statute is directed against lewd, lascivious and salacious or obscene publications the tendency of which is to excite lustful and lecherous desires. It is manifest from a reading of the opinion that it was not intended to prescribe for all future times by these words a definite and exclusive test to determine questions involving obscenity. Nor was it the decision of the court, but merely the individual views of the learned chief judge. As a conclusive indication that it was not the intention of the court by an individual concurring opinion to repeal, override or modify the views expressed in People v. Muller, 96 N. Y. 408, which is the leading authority in this state upon the subject of obscenity, it may be observed that the court made no mention or reference thereto, thus excluding any possible claim of retraction even by implication.

With due deference to the learned Appellate Division, my

view is that the test which was applied in the prevailing opinion in the Brainard Case, supra, if accepted by the courts as the sole test in determining an infraction of section 1141, Penal Law, is so narrow and restrictive as to render this very salutary section practically inoperative and of only partial functioning efficiency. I regard the logic of the minority opinion delivered by Mr. Justice Dowling as more definite and all comprehensive and more in harmony with the spirit and purpose of the statute in question. The lack of symmetry of prior interpretation and a misapprehension of a decision by our highest court, due in a large measure to the human difficulty of dealing with the abstract as well as the breadth of the section's scope, have left the subject in what I consider a confused state, justifying, perhaps, a brief resume of the principles and considerations useful to its interpretation. The inexactness of the law as a science is never more pointedly instanced than as here, when it is sought to chisel from abstractions of legal survey precise and mathematical-like rules for the analysis and admeasurement of the concrete. The important but not sole test, as approved in the Muller Case, supra, taken from the case of Regina v. Hicklin, L. R. 3 Q. B. 369, is one that I think should in part guide the law-enforcing authority and a court and jury in determining whether a book offends the law against obscene publications, namely: " Is the tendency of the matter charged as obscene to deprave or corrupt those whose minds are open to such immoral influences and who might come in contact with it?" keeping in full view the consideration that the statute looks to the protection not of the mature and intelligent, with minds strengthened to withstand the influences of the prohibited data, but of the young and immature, the ignorant and sensually inclined.

I am asked to consider as evidence of current opinion that the book in question is a distinct contribution to our literature and as not savoring of obscenity, that it has been accepted in other countries. And I am asked to consider also a number

of comments made by literary critics that the work has distinct
literary merit.   Acceptance in other places than our own of a
publication is of no importance to us unless the moral standard
of these other countries is a replica of our own.   The critics'
views may engage the attention of those frequenting their own
sphere.   They are valueless, however, as successful opposition
to the attack of the section.   Their opinions are inadmissible at
a trial.   They frequently look with a single eye to purity of
construction, vividness of phrase and skill in implanting ideas
in luminous expression.   In short, their art is confined to the
construction rather than the motive, to the means rather than
the result.   Charm of language, subtility of thought, faultless
style, even distinction of authorship, may all have their lure
for the literary critic, yet these qualities may all be present and
the book be unfit for dissemination to the reading public.   Fre-
quently these attractive literary qualities are the very vehicles
by which the destination of illegality is reached.   Neither
literary artistry nor charm and grace of exquisite composition
may cloak protectively those obnoxious impulses that subtly
creep unaware to a point of approval, which on patent appear-
ance would be abhorred.

> "So may the outward shows be least themselves;
> The world is still deceiv'd with ornament.
> In law, what plea so tainted and corrupt
> But, being seasoned with a gracious voice,
> Obscures the show of evil?   *   *   *
> There is no vice so simple but assumes
> Some mark of virtue on its outward parts."

We, therefore, cannot accept a book's adoption by another
land or the approval of critics as conclusive of non-obscenity
under the statute, for we may assert with pride—though not
boastfully—that we are essentially an idealistic and spiritual
nation and exact a higher standard than some others.   Aside
from the purely spiritual and idealistic viewpoint, the enforce-
ment of this section is of great materialistic concern to our

government. The future of a nation depends upon its youth. Our more enlightened conception of the need of protective measures to preserve our youth is reflected in the great progress that has taken place in recent years in the enactment of laws for the protection of the health of our women and children to save them from exploitation by the unscrupulous employer, and even sometimes, though rarely, the unscrupulous parent, in order that the child may become a healthy and useful citizen and the woman preserved for motherhood. We have the compulsory education laws; we have the laws prohibiting child labor, and when children are permitted by law to work we limit their hours of employment; we have the laws limiting the hours women may toil, and others prohibiting them from working in factories during the night time; we have laws insuring proper sanitary conditions under which they may be employed, the Widows' Pension Law and many others, here unnecessary to enumerate, of the same purport.

And while their enactment was actuated largely by our enlightened conceptions of social justice and motives altruistic, yet these laws also exist because the fostering of the health of women and children is one of grave governmental concern. Just as it is of national concern and interest to protect their health, it is equally important to protect our youth against the corruption of their morals, so that we may do everything within governmental power to afford them physical, mental and moral virility and not have their development arrested in these respects during the formative period. It is a national duty to prevent the moral or physical weakening of the family —"The Nursery of Mankind." History warns us that in the wake of a moral deterioration comes physical deterioration and national destruction. Hence our interest in the strict enforcement of all laws to prevent the publication and distribution of corrupt literature. As it is the duty of our law-enforcing branches of government to enforce with vigor these laws, so it is the co-relative function of the courts not to narrow the

law's application by accepting tests restrictive of the commonly accepted meaning of the words.

The meaning of the section to the ordinary mind defies misunderstanding. It deals with subjects which are felt, understood and appreciated by the layman. Instantaneous is the reaction, instinctive the revolt to better feelings when disregard occurs. It addresses itself largely to the good judgment, common sense, knowledge of human nature and its weaknesses. For this reason there can be established no absolute test to guide those responsible for its enforcement. No sentence, paragraph or opinion can set forth adequately and completely all the elements to be considered and the prevailing considerations to be applied. Moral standards of thought are not of static or plastic nature. Thought once accepted, of course, may today be repelled. It follows that the current opinion as to whether or not a publication falls within the prohibitions of the section may better be ascertained by a jury of varied occupations and of different experiences, yet all in touch with the currents of views and opinions. As was said in People v. Muller, supra, the question whether a writing " is obscene is one of the plainest that can be presented to a jury, and under the guidance of a discreet judge there is little danger of their reaching a wrong conclusion."

To summarize the general, though not exclusive, rules as aids to interpretation: The penal provision prohibits the publication of lewd, lascivious, salacious or obscene writings the tendency of which is to excite lustful and lecherous desires; likewise it prohibits the publication of those writings whose tendency is to deprave or corrupt minds open to immoral influences and who might come in contact with it. It is also offensive to the section if the matters charged as obscene are so filthy and disgusting as to be revolting to those who may have occasion to read them.

After a reading of the book in question, applying the principles of interpretation above set forth, I refuse to hold as a

matter of law that the book is not offensive to the Penal Law, section 1141. To declare the law and the means and methods of its application constitutes the boundaries of my province in this opinion. My view is that the publication is of such a character that both the state and the defendant are entitled to the opinion of a jury as to its alleged tendency toward depravity and corruption of mind. My decision is not to be regarded or understood as a declaration of finality; that would be a usurpation of the jury's powers. A charge has been made by a jury. That accusation is to be decided under the guidance of certain rules of law. Those I have tried to emphasize and explain. The trial jury must test the book by the application of the rules. Only in this way can a charge of crime be decided. The demurrer is overruled and the defendant given leave to withdraw the same and plead to the indictment.

Ordered accordingly.

---

## NOTE ON OBSCENE BOOKS, ETC. PENAL LAW, § 1141.

*Test of obscenity.*—The proper test of obscenity in a painting or statue is whether its motive, as indicated by it, is pure or impure, whether it is naturally calculated to excite in a spectator impure imaginations, and whether the other incidents and qualities, however attractive, are merely accessory to this as the primary or main purpose of the representation. (People v. Muller, 96 N. Y. 408, affg. 32 Hun, 209.

*Indecent.*—See People v. Gleekman, 178 App. Div. 882.

*Liability of corporation publishing book.*—The president of an incorporated publishing company who had no knowledge that his company intended to publish a certain book, the merits of which were passed upon at a literary conference of members of the corporation, and who was in fact, absent from the country at the time and who had never read the book and took no part in its sale or offer for sale, cannot be convicted of the crime of unlawfully possessing an obscene book. (People v. Brainard, 192 App. Div. 816.)

*Allegations in indictment.*—An indictment for a violation of this section in selling an obscene book is not defective because it fails to state the obscene matter, where it states the name of the book and excuses a statement of the obscene matter by stating that the book is so obscene and dis-

gusting that it would be offensive to the court, and improper to be placed on the records thereof. (People v. Kaufman, 14 App. Div. 305.)

But where such an excuse is not made on the face of the indictment, the obscene matter must be set out. (People v. Danihy, 63 Hun 579—and in any event, at least a general description of it must be made in the indictment. People v. Hallenbeck, 52 How. Pr. 502.)

The word "indecent" as used in this section relates to lewd, lascivious or obscene prints or publications, the tendency of which is to excite lustful desire, and, hence, has no application to an attack on a body of Christian clergymen by an article which though scurrilous and vile, is not lewd or lustful in its tendency. (People v. Eastman, 188 N. Y. 478.)

A person cannot be convicted of a violation of this section in selling an obscene book where it is shown that he purchased it for another, as the sale, not the purchase is the gist of the offense. (People v. Kaufman, 14 App. Div. 305.)

A contract for the sale of books cannot be declared illegal because of their character unless their sale or publication violates the provisions of this section, and such provisions cannot be invoked against works generally recognized as literary classics. (St. Herbert Guild v. Quinn, 64 Misc. 336.)

*Indecent articles.*—The provision of this section which makes it a misdemeanor to sell, advertise or give information for the prevention of conception is not unconstitutional. (People v. Sawyer, 222 N. Y. 192. See also People v. Byrne, 99 Misc. 1.)

The commissioner of licenses of New York City was justified under this section in revoking the license of a theatre which proposed to show a moving pictures known as "Birth Control." (Message Photo Play Co. v. Bell, 179 App. Div. 13.)

A person convicted of a violation of this section in exhibiting an obscene moving picture film, being subject to a fine not exceeding $1000 or to imprisonment not exceeding a year, is guilty of a felony under section 2182. Accordingly a police court whose jurisdiction is limited to imposing fines not exceeding $500 or sentences of imprisonment not exceeding a year, has no jurisdiction to try a defendant for a violation of section 1141.

The previous good character of a person charged with a violation of this section, although shown, is not conclusive as if the jury concludes that defendant is guilty, they must find so, notwithstanding his good character. (People v. Brown, 153 App. Div. 234.)

*Expert testimony.*—The question whether a picture is obscene or whether a publication is offensive to decency are matters which fall within the range of ordinary intelligence and a jury does not require to be informed by an expert before pronouncing upon them. (People v. Muller, 96 N. Y. 408.)