In the Matter of UNITED PRESS ASSOCIATIONS et al., Petitioners, against FRANCIS L. VALENTE, Individually and as Judge of the Court of General Sessions of the County of New York, Respondent.

In the Matter of NORTH AMERICAN NEWSPAPER ALLIANCE, INC., Petitioner, against FRANCIS L. VALENTE, Individually and as Judge of the Court of General Sessions of the County of New York, Respondent.

Supreme Court, Special Term, New York County, February 17, 1953.

*De Witt, Van Aken & Nast* for United Press Associations, petitioners.

*Brown, Cross & Hamilton* for New York Herald Tribune, Inc., petitioner.

*McCauley & Henry* for Hearst Consolidated Publications, Inc., and another, petitioners.

*Townley, Updike & Carter* for News Syndicate Co., Inc., petitioner.

*M. Marvin Berger* for New York Post Corporation, petitioner.

*Ernest Cuneo* for North American Newspaper Alliance, Inc., petitioner.

*Frank S. Hogan, District Attorney (Richard G. Denzer, Charles W. Manning* and *Stuart G. Schwartz* of counsel), for respondent.

SCHREIBER, J. These are applications by various newspaper publishers and associations for an order of prohibition against the Hon. FRANCIS A. VALENTE, Judge of the Court of General Sessions, restraining said Justice from enforcing an order made by him during the pending trial of the action of *People* v. *Jelke.* The order excluded the general public and the press from the courtroom for the duration of the People's case.

The defendant, Jelke, is being tried under an indictment charging him with the crimes of (1) conspiracy to commit acts injurious to public morals (Penal Law, § 580, subd. 6); (2) male person living on the proceeds of prostitution (Penal Law, § 1148); and (3) compulsory prostitution of women (Penal Law, § 2460). The basis of the order of exclusion was the belief of the trial court that great harm to public morals and decency was to be apprehended from the impact upon the general public of the anticipated testimony in the case, dealing with sordid and filthy details and instances of human depravity and degradation.

On an application of this character, the only question presented for determination is whether the trial court had the power to make the order complained of, not the question of the

propriety or advisability of the order or whether the court exercised good judgment in making it. In *People ex rel. Livingston* v. *Wyatt* (186 N. Y. 383) the Court of Appeals said (pp. 393–394): " it [prohibition] runs against the exercise of unauthorized power * * *. The sole question to be tried is the power of the inferior court or magistrate to do the particular act in question." The rule is stated in Carmody on New York Practice (Vol. 10, § 839, p. 874): " Prohibition is the appropriate remedy when the court is about to exercise a power it does not possess." In *Matter of Hogan* v. *Court of General Sessions* (296 N. Y. 1) the court said (p. 8): " These contentions overlook the function of the writ of prohibition, not merely to restrain an unwarranted assumption of jurisdiction, but also to restrain an inferior court from exceeding its authorized powers in a proceeding over which it has jurisdiction." If the trial court had the power to make the order of exclusion, the application for an order of prohibition must be denied without considering whether the exercise of power was or was not, in the judgment of this court, justified or advisable on the basis of the facts before the trial court. This court may not, even if it wished to, substitute its own judgment for that of the trial court as to an order which the latter had the power to make.

Although subdivision 1 of section 8 of the Code of Criminal Procedure guarantees a defendant in a criminal action the right to a " public trial ", that section must be read in conjunction with section 4 of the Judiciary Law which lists eight classes of cases as exceptions to the mandatory requirement of a public trial. (*People* v. *Miller*, 257 N. Y. 54, 60.) Section 4 provides that: " The sittings of every court within this state shall be public, and every citizen may freely attend the same, except that in all proceedings and trials in cases for divorce, seduction, abortion, rape, assault with intent to commit rape, sodomy, bastardy or filiation, the court may, in its discretion, exclude therefrom all persons who are not directly interested therein, excepting jurors, witnesses, and officers of the court." The Legislature has thus clearly provided that in the eight classes of cases listed in section 4 (*supra*), the trial court may exclude, in its discretion, all persons not directly interested in the case except jurors, witnesses and court officers.

The papers submitted by the respondent on the present applications establish that the trial court's expectation that the testimony at the trial would be steeped in filth was well founded. Photographs showing the commission of sodomy have been introduced into evidence and testimony as to the commission of

sodomy has been elicited by counsel. Sodomy is one of the eight specified exceptions to the requirement of a public trial listed in section 4 of the Judiciary Law. Clearly, the Legislature intended to confer upon trial courts the power, in their discretion, to bar the general public from trials involving testimony as to sodomy.

Sodomy was not added to the exceptions in section 4 (*supra*) until 1945 (L. 1945, ch. 649). Even prior to that amendment, the Appellate Division had held that the trial court had properly excluded the public and the press from a trial on the charge of extortion in which testimony as to sodomy would be introduced (*People* v. *Hall*, 51 App. Div. 57). At that time, section 5 of the Code of Civil Procedure, the predecessor of section 4 of the Judiciary Law, was worded in language substantially identical with section 4. Although the exceptions listed in the statute did not include the crimes of extortion or sodomy, the court held that the listed exceptions were not all-inclusive and that the statute did not " wrest from the trial judge the discretion to conduct the trial in such wise as to be consonant with good morals and common decency ". (P. 61.) Thereafter, section 5 of the Code of Civil Procedure was re-enacted without change as section 4 of the Judiciary Law. The Legislature must therefore be deemed to have approved the doctrine of *People* v. *Hall* (*supra*) for it is a well-settled rule of statutory construction that, " if a term or clause used in the original statute has been judicially construed, the retention of such term or clause in a subsequent amendatory act generally requires that it shall receive the same construction ". (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], p. 268.) With knowledge of the decision in *People* v. *Hall* (*supra*), no effort was made to change the statute, when it was re-enacted, to limit the discretionary power to exclude solely to the cases listed in the statute or to curtail the power of the court to extend the statutory exceptions asserted in *People* v. *Hall* (*supra*). The addition of " sodomy " to the statutory exceptions in 1945, was made upon the recommendation of the Judicial Council of this State for the express purpose of conforming to the doctrine of *People* v. *Hall* (*supra*). (Tenth Annual Report of N. Y. Judicial Council, 1944, p. 176): " It is further recommended to include sodomy in this section *in conformity* with the dictum in *People* v. *Hall*, 51 App. Div. 57 (4th Dept., 1900) ' * * * That the protection of a public trial must be given to every defendant charged with a crime is obvious. No court in this

nation has ever held otherwise, so far as I am able to ascertain. That principle must be upheld unimpaired, but its retention does not entirely wrest from the trial judge the discretion to conduct the trial in such wise as to be consonant with good morals and common decency and in an orderly manner.' " (Italics supplied.) Although it is difficult to understand how the addition of sodomy to the listed exceptions conformed to the doctrine of *People* v. *Hall* (*supra*), that the trial court could extend the statutory exceptions, the fact that the Judicial Council stated that its purpose was to " conform " with that doctrine and that the Legislature accepted that recommendation, must be deemed to indicate further legislative approval of the decision in *People* v. *Hall* (*supra*). The specific reference to sodomy must have been added for purposes of clarification. Certainly nothing was added to the statute, either in 1909 when it was re-enacted, or 1945 when it was amended, which would even remotely suggest legislative disapproval of the holding of *People* v. *Hall* (*supra*).

It should be observed that in treating the *Hall* case as one of " sodomy ", the Judicial Council recognized that for the purposes of the right to exclude the public, it is not the offense or crime charged (extortion in the *Hall* case) which is determinative, but rather the nature of the evidence to be adduced at the trial. It was only because evidence of sodomy was anticipated in the *Hall* case that the order of exclusion was upheld. So here, it is the fact that evidence of sodomy has been introduced that brings this case within the exceptions expressed in section 4 of the Judiciary Law.

The fact that the evidence of sodomy was not introduced until after the order excluding the public had been made does not avail petitioners since, as soon as such testimony was offered, the trial court would have been justified in barring the public and the result would be the same as it is now. Furthermore, as already indicated, the doctrine of *People* v. *Hall* (*supra*) which has received the approval of the Judicial Council and the Legislature, authorizes the trial court, in its discretion, to exclude the public and the press from trials involving testimony as to sexual crimes such as those charged under the Jelke indictment, even if not expressly named in section 4 of the Judiciary Law.

In view of the amendment of section 4 (*supra*) to include sodomy among the exceptions to the requirement of a public trial, and the approval of the doctrine of *People* v. *Hall*

(*supra*) by the Legislature and the Judicial Council, this court is constrained to hold that the order of the Court of General Sessions excluding the public and the press from the Jelke trial was one which the Trial Judge had the *power* to make.

There remains for consideration the claim of petitioners that the order of exclusion violated the constitutional guarantees of freedom of the press, freedom of speech, and due process. *It is to be noted that these applications are not made by the defendant Jelke, but by the press as members of the public. The question whether Jelke's rights under the due process clause of the Fourteenth Amendment to the United States Constitution have been violated* (see *Matter of Oliver,* 333 U. S. 257) *is, therefore, not before this court for determination.* The guarantees of freedom of speech and freedom of the press in the first ten amendments to the Federal Constitution are inapplicable to trials in State courts. (*Gaines* v. *Washington,* 277 U. S. 81, 85–86.) The provision of section 8 of article I of the Constitution of the State of New York that " no law shall be passed to restrain or abridge the liberty of speech or of the press " obviously guarantees only the free and unrestricted right to disseminate knowledge or information possessed by the public or the press. It does not purport to confer upon the public or the press a constitutional right of access to all places, whether public or private, with the object of securing information for purposes of publication. The rights to freedom of speech and freedom of the press were not intended to destroy all rights of privacy and secrecy. The claim that petitioners are being deprived of their property rights in violation of the due process clause of the Fourteenth Amendment to the United States Constitution is also predicated upon the false assumption that petitioners have a constitutional right to be present at all trials and obtain for publication purposes all the information disclosed in such trials. No such constitutional right exists. Petitioners' only right is that given by section 4 of the Judiciary Law. The decisions relied upon by petitioners relate to restrictions upon the publication of material in the possession of the publisher, not to the publisher's right to attend trials for the purpose of securing such information.

Much has been said, in the argument before this court and in the briefs, about the " dangerous precedent " established by the order of the Court of General Sessions. It has been attacked as a reversion to the days of Star Chamber proceedings which may, if followed, result in the conviction of many innocent defendants because " the knowledge that every crimi-

nal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power '' (*Matter of Oliver,* 333 U. S. 257, 270, *supra*), and the removal of that restraint may lead to judicial excesses. This court is in wholehearted accord with the eminent desirability that all trials, except in the rarest of instances, be fully exposed to the public view and to the checks upon arbitrary and tyrannical action which result from the limelight of publicity. The present applications, however, do not, as observed at the outset of this opinion, legally permit this court to substitute its own views as to whether the Jelke trial should be public or secret for those of the trial court conducting that case. This court is not an appellate court and does not possess the power to review an order of the Court of General Sessions. That power rests only in the Appellate Division and the Court of Appeals. Under well-settled legal principles the only question which this court has the right to decide on the present applications for an order of prohibition is a very limited and narrow one, viz.: did the Court of General Sessions have the power in a case involving *sodomy* to exclude the public and the press. If the Court of General Sessions did possess that power, this court is without jurisdiction to prohibit the enforcement of the order of exclusion *no matter how much this court may disagree with the trial court's decision to exercise that power.*

The apprehended danger *to the defendant,* of which so much is made, is not a question to be considered on the present applications since the defendant, though he could have done so, has not joined in the applications for an order of prohibition nor has he made an independent application for such an order. His counsel apparently have decided to attack the propriety of the order of exclusion on appeal from a judgment of conviction, in the event that Jelke should be convicted.

To repeat: *This court has no right or power on these applications to decide whether the Trial Judge should or should not have ordered the exclusion of the public and the press from the Jelke trial, and the fact that possible injury to the rights of the defendant may flow from the order is not a question to be considered because the defendant makes no complaint to this court.*

As the respondent's order violated no statutory or constitutional right of the petitioners and as the order was one which he had the power to make, these motions for an order of prohibition are denied.

The Clerk of the County of New York is hereby directed to impound and seal the affidavit of Richard G. Denzer verified the 16th day of February, 1953, together with the exhibits thereto annexed and volume II of the stenographers' minutes (District Attorney's 2d copy).