THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. MINOT F. JELKE, Also Known as MICKEY JELKE, Respondent.

Argued October 19, 1954; decided December 31, 1954.

*Frank S. Hogan, District Attorney* (*Richard G. Denzer* and *Warren S. Tenney* of counsel), for appellant. I. Defendant's guilt was proved beyond a reasonable doubt. (*People* v. *Taleisnik,* 225 N. Y. 489; *People* v. *Plath,* 100 N. Y. 590.) II. A substantial exclusion order was desirable, salutary and in the public interest, and the court had power to make such a ruling on the basis of moral considerations. (*Danziger* v. *Hearst Corp.,* 304 N. Y. 244; *Matter of United Press Assns.* v. *Valente,* 281 App. Div. 395; *Hanna* v. *Mitchell,* 202 App. Div. 504, 235 N. Y. 534; *Matter of New York State Licensed Bail Agent's Assn.* v. *Murtagh,* 279 App. Div. 851, 303 N. Y. 1009; *People* v. *Hall,* 51 App. Div. 57; *Sawyer* v. *Duffy,* 60 F. Supp. 852; *Hogan* v. *State,* 191 Ark. 437; *Benedict* v. *People,* 23 Col. 126; *State* v. *Johnson,* 26 Idaho 609; *State* v. *McCool,* 34 Kan. 617; *State* v. *Croak,* 167 La. 92; *State* v. *Nyhus,* 19 N. D. 326; *State* v. *Adams,* 100 S. C. 43; *State* v. *Holm,* 67 Wyo. 360; *Myers* v. *State,* 97 Ga. 76; *State* v. *Genese,* 102 N. J. L. 134; *Pierpont* v. *State,* 49 Ohio App. 77; *Commonwealth* v. *Principatti,* 260 Pa. 587; *State* v. *Beckstead,* 96 Utah 528; *Tanksley* v. *United States,* 145 F. 2d 58; *Hanfgarn* v. *Mark,* 274 N. Y. 22.) III. Defendant had a public trial. (*Matter of Oliver,* 333 U. S. 257; *United States* v. *Kobli,* 172 F. 2d 919; *Tanksley* v. *United States,* 145 F. 2d 58; *Commonwealth* v. *Blondin,* 324 Mass. 564; *Hogan* v. *State,* 191 Ark. 437; *People* v. *Swafford,* 65 Cal. 223; *State* v. *Johnson,* 26 Idaho 609; *State* v. *Beckstead,* 96 Utah 528; *People* v. *Hall,* 51 App. Div. 57; *State* v. *Holm,* 67 Wyo. 360.) IV. The law of New York, as reflected in section 4 of the Judiciary Law and as applied in the present case, does not violate any provision of the Federal Constitution. (*Gaines* v. *Washington,* 277 U. S. 81; *Adamson* v. *California,* 332 U. S. 46; *Palko* v. *Connecticut,* 302 U. S. 319; *Snyder* v. *Massachusetts,* 291 U. S. 97; *Hebert* v. *Louisiana,* 272 U. S. 312; *United States* v. *Kobli,* 172 F. 2d 919; *Tanksley* v. *United States,* 145 F. 2d 58; *Reagan* v. *United States,* 202 F. 488; *Commonwealth* v. *Blondin,* 324 Mass. 564;

*Moore* v. *State,* 151 Ga. 648.)   V. The trial was fair and there is no indication of prejudice to defendant as a result of the exclusion order.   (*Hogan* v. *State,* 191 Ark. 437; *State ex rel. Baker* v. *Utecht,* 221 Minn. 145; *State* v. *Damm,* 62 S. D. 123; *Grimmett* v. *State,* 22 Tex. App. 36; *State* v. *Holm,* 67 Wyo. 360; *People* v. *Sorge,* 301 N. Y. 198.)

*George W. Herz* and *Arthur R. Stelljes* for respondent. I. The court, in cloaking the trial in secrecy during the People's case and, on its own motion, throwing its doors wide open during defendant's case, further prejudiced defendant by giving the prosecutor a great procedural advantage and placed an added and illegal burden on defendant.   (*Murphy* v. *People,* 2 Cow. 815; *Barker* v. *People,* 3 Cow. 686; *People* v. *Hall,* 51 App. Div. 57; *People* v. *Murray,* 89 Mich. 284; *People* v. *Jaeger,* 113 Mich. 228; *People* v. *Miller,* 257 N. Y. 54; *Tanksley* v. *United States,* 145 F. 2d 58; *Leach* v. *Carlile,* 258 U. S. 138; *Craig* v. *Harney,* 331 U. S. 367; *Matter of United Press Assns.* v. *Valente,* 281 App. Div. 395; *Matter of Oliver,* 333 U. S. 257; *United States* v. *Kobli,* 172 F. 2d 919.)   II. The secret talk between the Judge and the jury was, in fact, a part of the trial conducted strictly in camera and to that extent denied defendant a public trial resulting in his conviction and loss of liberty without due process of law.   (*People* v. *Bragle,* 88 N. Y. 585; *Maurer* v. *People,* 43 N. Y. 1; *People* v. *La Barbera,* 274 N. Y. 339; *Wheaton* v. *United States,* 133 F. 2d 522; *Chambers* v. *United States,* 237 F. 513; *Sargent* v. *Roberts,* 1 Pick [Mass.] 337; *People ex rel. Flaherty* v. *Neilson,* 22 Hun 1; *Watertown Bank & Loan Co.* v. *Mix,* 51 N. Y. 558; *People* v. *Linzey,* 79 Hun 23; *People* v. *Perkins,* 1 Wend. 91.)   III. Defendant was denied a public trial. He was in consequence convicted and deprived of his liberty without due process of law in violation of his rights as guaranteed by the Fourteenth Amendment of the Constitution of the United States.   (*Adamson* v. *California,* 332 U. S. 46; *Chambers* v. *Florida,* 309 U. S. 227; *People* v. *Murray,* 89 Mich. 284; *People* v. *Yaeger,* 113 Mich. 228; *Palko* v. *Connecticut,* 302 U. S. 319.) IV. It was error to receive in evidence the testimony and office records of Dr. Marvin Linnick in an attempt to corroborate the testimony of a witness, when such evidence did not, in fact,

tend to connect defendant with the crime. (*People* v. *Nitzberg,* 287 N. Y. 183; *People* v. *Maione,* 284 N. Y. 423; *People* v. *Ice,* 265 App. Div. 46; *People* v. *Reddy,* 261 N. Y. 479; *Shepard* v. *United States,* 290 U. S. 96; *People* v. *Hooghkerk,* 96 N. Y. 149.) V. The trial court committed error and hopelessly confused the jury in charging the elements of the crime of conspiracy and reviewing the evidence introduced in support thereof after having withdrawn the conspiracy count from the jury's consideration. VI. The trial court committed prejudicial error in allowing hostile witnesses to testify to their opinions concerning the meaning of conversations which they had just testified to when said conversations were in the English language and required no technical or scientific interpretation. (*People* v. *Sharpe,* 107 N. Y. 427; *Ferguson* v. *Hubbell,* 97 N. Y. 507; *Mather* v. *Parsons,* 32 Hun 338; *Vaughn* v. *Strong,* 66 Hun 273; *Braley* v. *Braley,* 16 N. H. 426; *Hibbard* v. *Russell,* 16 N. H. 410; *Kingsbury* v. *Moses,* 45 N. H. 222; *Crowell* v. *Western Reserve Bank,* 3 Ohio St. 406; *Morache* v. *Greenberg,* 116 Conn. 549; *Newton* v. *Los Angeles Tr. Lines,* 237 P. 2d 682.)

FULD, J. The significant question here posed concerns the power of the trial court to exclude members of the general public, including representatives of the press, from the courtroom during the trial of a criminal prosecution.

The issue arose in the trial of Minot F. Jelke, on widely publicized charges of compulsory prostitution (Penal Law, § 2460) and other offenses of like character (Penal Law, § 1148), in the Court of General Sessions of the County of New York. Shortly after the trial got under way, the presiding judge, Honorable FRANCIS L. VALENTE, made an order, on his own motion and over defendant's objection, excluding "the general public and the press * * * from the courtroom for the duration of the People's case." Defendant was, however, expressly permitted "to have present in the courtroom throughout the trial, any friends or relatives he deems necessary for the protection of his interests".

In announcing his ruling, the trial judge commented upon "the obscene and sordid details" which the opening statements of the district attorney and defense counsel indicated

would be adduced, and he observed that " the sound administration of justice and  *  *  *  the interests of good morals " demanded that the curtain be drawn " on the offensive obscenity of this already over-publicized trial." He further directed that copies of the minutes of the trial were not to be made available, without the court's permission, to anyone other than the defendant or the district attorney.

The press and the general public, with the exception of friends and relatives of defendant, were thus barred from the courtroom until the close of the People's case, at which point the courtroom doors were again thrown open to all.

The jury returned a verdict of guilty on two counts of compulsory prostitution, and, upon appeal, the Appellate Division, by a divided court, reversed the resulting judgment of conviction " on the law " and ordered a new trial upon the ground that defendant had been deprived of a public trial (284 App. Div. 211). The People have appealed to this court, pursuant to permission granted by one of the justices who dissented in the Appellate Division.

There is also before us an appeal by certain press associations and newspaper publishers who had instituted a separate proceeding in the nature of prohibition in the Supreme Court of New York County, while the Jelke trial was still in its initial stages, to restrain Judge VALENTE from enforcing and carrying out his ruling, on the theory that it violated *their* right to have Jelke's trial open to the public. That application was denied at Special Term, and the Appellate Division affirmed. (*Matter of United Press Assns.* v. *Valente,* 281 App. Div. 395.) The issues posited by the appeal in that case, also decided today, are separately considered (308 N. Y. 71).

Of uncertain origin, but nevertheless firmly rooted in the common law, the right to a public trial has long been regarded as a fundamental privilege of the defendant in a criminal prosecution. (See 1 Bentham, Rationale of Judicial Evidence [1827], Book II, ch. X; 2 Bishop, New Criminal Procedure [2d ed., 1913], p. 767; 3 Blackstone's Comm. [Lewis ed., 1897], pp. 372–373; 2 Hale, History of the Common Law of England [5th ed., 1794], pp. 141–142; 2 Coke's Institutes [1797], pp. 103–104; Radin, The Right to a Public Trial, 6 Temple L. Q. 381.) It is a right that is embodied in the Sixth Amendment to the

United States Constitution, as respects prosecutions in the federal courts, and is likewise· protected by constitution, statute or decision in almost every state in this country. (See *Matter of Oliver,* 333 U. S. 257, 267–268.)

In New York, the right to a public trial is guaranteed by statute, rather than constitution, but nevertheless remains a basic privilege of the accused. Section 8 of the Code of Criminal Procedure and section 12 of the Civil Rights Law thus declare that in criminal prosecutions the accused is entitled to " a speedy and public trial ". And, in broader and more general language, section 4 of the Judiciary Law provides, subject to certain stated exceptions, that " The sittings of every court within this state shall be public ".[1]

All three statutory provisions were derived from the revised statutes of 1829. The revisers noted that the guarantee to an accused of " a speedy and public trial " was derived from the similarly worded provision of the Sixth Amendment (see Revisers' Notes to Rev. Stat. of N. Y. [1829], part I, ch. IV, § 14), and that the other provision, now embodied in section 4 of the Judiciary Law, was " Declaratory of the existing law." (See Revisers' Notes to Rev. Stat. of N. Y. [1829], part III, ch. III, tit. I, § 1, found in Reports to Legislature by N. Y. Comrs. to Revise Statutes [1828], as well as in 3 Rev. Stat. [2d ed., 1836], Appendix, p. 694.)

A variety of purposes has been ascribed to the principle of publicity in judicial proceedings. Foremost is that of affording greater security to the individual in the administration of justice. In contrast to secret inquisitional techniques, which are alien to a free society, publicity serves as a safeguard against unjust persecution of an accused and goes far toward insuring him the fair trial to which he is entitled. (See 1 Bentham, *op. cit.,* pp. 523–524; 1 Cooley, Constitutional Limitations [8th ed., 1927], p. 647.) " The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." (See *Matter of Oliver, supra,* 333 U. S. 257, 270.) Publicity has also been deemed to play an important role

---

1. The section continues, "and every citizen may freely attend the same, except that " in certain specified cases " the court may  *  *  *  exclude therefrom " all persons " not directly interested therein ".

in assuring "testimonial trustworthiness", "by inducing the fear of exposure" of testimony falsely given (see 6 Wigmore on Evidence [3d ed., 1940], § 1834, p. 332; 1 Bentham, op. cit., pp. 523–524; 3 Blackstone, op. cit., p. 373), as well as in bringing notice of the proceedings to the attention of possible witnesses who may not be known to the parties. (See Tanksley v. United States, 145 F. 2d 58, 59; see, also, 6 Wigmore, op. cit., pp. 332–334.)

The public trial concept has, however, never been viewed as imposing a rigid, inflexible straitjacket on the courts. It has uniformly been held to be subject to the inherent power of the court to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice. (See Bowers, Judicial Discretion of Trial Courts [1931], § 262, pp. 296–297; 6 Wigmore, op. cit., p. 338; 1 Bentham, op. cit., p. 541 et seq.) Accordingly, it is recognized that the court may limit the number of spectators in the interests of health or for sanitary reasons or in order to prevent overcrowding or disorder. (See People v. Miller, 257 N. Y. 54, 60; Crisfield v. Perine, 15 Hun 200, 201, affd. 81 N. Y. 622; Reagan v. United States, 202 F. 488, 489–490; United States v. Kobli, 172 F. 2d 919, 921–922; People v. Hartman, 103 Cal. 242, 245; Myers v. State, 97 Ga. 76, 99; State v. Brooks, 92 Mo. 542, 573; State v. Keeler, 52 Mont. 205, 216–217.) It is also recognized that the court may temporarily exclude spectators, where necessary to enable an immature or emotionally disturbed witness to testify. (See Hogan v. State, 191 Ark. 437; Moore v. State, 151 Ga. 648; State v. Damm, 62 S. D. 123; see, also, State ex rel. Baker v. Utecht, 221 Minn. 145, 149.) [2]

The authority thus residing in the trial court must be acknowledged as an implicit qualification of the general rule of openness of judicial proceedings (see, e.g., United States v. Kobli, supra, 172 F. 2d 919, 922; State v. Keeler, supra, 52 Mont. 205, 216), notwithstanding the wording of the Judiciary Law section. As noted above, the revisers who drafted that provision viewed it merely as "Declaratory of the existing law", rather than as some radical innovation. Section 4 undoubtedly has

2. Exclusion of the general public has also been sustained, when necessary to preserve the secrecy of trade secrets involved in a particular litigation. (See, e.g., National Starch Products v. Polymer Industries, 273 App. Div. 732, 739.)

the effect of extending the guarantee of public trial to all cases, whether civil or criminal, with the exceptions there set forth. But, beyond that, it presumably does no more than to reaffirm in terms of general application the principle of publicity in judicial proceedings, subject to the qualifications inherent therein. (See *People* v. *Murray,* 89 Mich. 276, 286.)

Although it is plain that the exclusion order in the instant case was made, not to preserve order and decorum in the courtroom or to protect the rights of parties or witnesses at the trial, but in asserted deference to general considerations of public decency and morality, the district attorney urges that the action taken by the trial judge was, nevertheless, within the authority granted by section 4 of the Judiciary Law. With that we cannot agree.

That statute, after reciting that the sittings of every court " shall be public ", goes on to provide, " except that in all proceedings and trials in cases for divorce, seduction, abortion, rape, assault with intent to commit rape, sodomy, bastardy or filiation, the court may, in its discretion, exclude therefrom all persons who are not directly interested therein, excepting jurors, witnesses, and officers of the court." When adopted in 1879 (L. 1879, ch. 210, amdg. Code Civ. Pro., § 5), the provision did not include cases of sodomy or filiation; they were added in 1945 (L. 1945, ch. 649, § 3, amdg. Judiciary Law, § 4).

The present prosecution for compulsory prostitution is, of course, not one of the cases excepted from the statute's mandate. That evidence of a sodomous act may have been anticipated, and was actually adduced during cross-examination of one of the People's witnesses, did not convert that compulsory prostitution case into one for sodomy, and, in any event, could not justify exclusion of the public during other stages of the trial.

The district attorney, however — citing *People* v. *Hall* (51 App. Div. 57), which this court has never followed or approved — contends that, despite its enumeration of specific cases, the Judiciary Law provision reflects a policy of permissible exclusion of the general public in any and all cases, even though not listed, where evidence of an indecent or filthy nature is anticipated, and that the statute should be broadly construed to give effect to that policy. Perhaps strong arguments may

be made for the enactment of legislation of that sort, but we find no basis or warrant for adding, by judicial construction, to the enumeration of cases deliberately selected by the legislature for exceptional treatment. The language employed is too plain and unambiguous to permit the courts to engraft additional exceptions thereon. (Cf. *Matter of Rathscheck,* 300 N. Y. 346, 350, also concurring opinion, p. 352; *People ex rel. Knott Corp.* v. *Graves,* 286 N. Y. 377, 381; *McCluskey* v. *Cromwell,* 11 N. Y. 593, 601–602.) Moreover, the right of public trial is of such surpassing importance that any statute purporting to limit or qualify that right should be " strictly construed in favor of the general principle of publicity." (*Commonwealth* v. *Blondin,* 324 Mass. 564, 571; see *Wade* v. *State,* 207 Ala. 1; *Stewart* v. *State,* 18 Ala. App. 622, 623; *Sallie* v. *State,* 155 Miss. 547, 551; *State* v. *Jordan,* 57 Utah 612.)

Indeed, the very fact that section 4 was amended in 1945 to include two additional specific classes of cases — those of sodomy and filiation — affords confirmation that the legislative purpose was to deal with particular cases, rather than generally with every case in which one or more witnesses are expected to testify to obscene, indecent or salacious details. However illogical or incomplete the statutory classification may appear to be, the remedy lies with the legislature; the courts are powerless to rewrite the statute to give effect to their own concepts of public policy.

The Judiciary Law section, accordingly, may not here serve as a predicate for relaxation of the requirements of a public trial. We turn, then, to the district attorney's further contention that the court had inherent power, separate and apart from statute, to exclude the general public and the press in a case of this kind in the interests of public decency. The argument is also made that the trial could in no event be deemed nonpublic, since it was open to defendant's friends and relatives.

The demands of public morality do not, however, justify judicial nullification of the right of public trial, even in cases of an obscene or indecent nature, and restriction of attendance to a limited class of persons — such as defendant's friends and relatives — does not satisfy the legislative mandate. (See *United States* v. *Kobli, supra,* 172 F. 2d 919; *Tanksley* v. *United States, supra,* 145 F. 2d 58; *People* v. *Yeager,* 113 Mich. 228; *State* v.

*Keeler, supra,* 52 Mont. 205; *Rhoades* v. *State,* 102 Neb. 750; *State* v. *Osborne,* 54 Ore. 289; *Neal* v. *State,* 86 Okla. Cr. 283.) There are, it is true, decisions in several states which have sustained the inherent power of the court to exclude the general public from trials involving sexual offenses, provided friends or relatives of the defendant's choosing are permitted to remain in the court-room. (See, e.g., *State* v. *Johnson,* 26 Idaho 609; *State* v. *Croak,* 167 La. 92; *State* v. *Nyhus,* 19 N. D. 326; cf. *Robertson* v. *State,* 64 Fla. 437.) Those cases, however, reflect an unduly narrow view, to which we cannot subscribe, of the purposes and scope of a public trial.

The principle of publicity must at times yield, as noted above, independently of statutory qualification, to the contending considerations of sound judicial administration. The exclusion of particular spectators or classes of spectators may then be justified, without impairing the essential nature of the trial, which remains otherwise open to the public at large. There is, however, a vast difference between a trial of that kind, to which *everyone is admitted except* a designated few, and one, as in the case before us, from which *everyone is excluded but* a limited class.

While the trial judge might have been warranted in barring minors from the trial (see *People* v. *Murray, supra,* 89 Mich. 276, 291; *State* v. *Keeler, supra,* 52 Mont. 205, 217; *State* v. *Nyhus, supra,* 19 N. D. 326, 330–331; *State* v. *Hensley,* 75 Ohio St. 255, 265), his order was not so confined, and the considerations affecting the immature and impressionable minor are not necessarily applicable to spectators more mature and experienced. (See *United States* v. *Kobli, supra,* 172 F. 2d 919, 923; see, also, 1 Bentham, *op. cit.,* pp. 564–565; 1 Cooley, *op. cit.,* p. 647.) And, whatever our view with regard to the attendance of the prurient-minded or the sensation-seeker at trials such as this (see 1 Cooley, *op. cit.,* p. 647; 6 Wigmore, *op. cit.,* p. 338; and compare *People* v. *Hall, supra,* 51 App. Div. 57, 63, with *United States* v. *Kobli, supra,* 172 F. 2d 919, 923–924), it would certainly not justify a court order generally and indiscriminately barring the public at large.

The statutory requirement of a public trial is not satisfied simply by allowing relatives and friends of defendant's choosing to be present. A trial open only to such a limited class of per-

sons may not be regarded as public, particularly if no representative of the press is permitted to attend. (See Note, 49 Col. L. Rev. 110, 116–117.) A defendant may not have any relatives or friends available or willing to attend the trial, and, even if he has, such a handful is not by any means sufficiently representative of the public to provide the protection to an accused and the "contemporaneous review in the forum of public opinion" that a public trial is designed to assure and afford. (*Matter of Oliver, supra,* 333 U. S. 257, 270.)

Due regard for defendant's right to a public trial demanded, at the very least — certainly, lacking valid legislative sanction — that he be not deprived of the possible benefits of attendance by the press. (See *Keddington* v. *State,* 19 Ariz. 457, 459; see, also, Radin, *op. cit.,* pp. 391, 394; Note, 35 Mich. L. Rev. 474, 479.) Its widespread reporting of what goes on in the courts may well prove a potent force in restraining "possible abuse of judicial power." (*Matter of Oliver, supra,* 333 U. S. 257, 270.) That being so, justification for excluding the press in this case may not be found in the sensational and vulgar coverage which the proceedings may have been receiving in some newspapers and which evidently disturbed the trial judge. Deplore as we may the bad taste of reporting of that kind, the courts may not take unto themselves the power to enforce their notions of public decency and morality at the sacrifice of basic rights guaranteed to the defendant by statute. The task of balancing the several competing interests and considerations must in this instance be left to the legislature, fully competent as it is to qualify or limit the rights granted by it, so long as the requirements of due process are not offended. (See *Commonwealth* v. *Blondin, supra,* 324 Mass. 564, 570–572.)

In sum, then, although the trial judge was unquestionably actuated by the highest of motives, the conclusion is inescapable that his order excluding the public was not sanctioned by legislation, or otherwise authorized, and deprived defendant of a substantial right. Accordingly, as the Appellate Division held, defendant was entitled to a new trial without an affirmative showing of prejudice. (See *United States* v. *Kobli, supra,* 172 F. 2d 919; *Tanksley* v. *United States, supra,* 145 F. 2d 58; *Davis* v. *United States,* 247 F. 394.) To the plaint that such a ruling will result in reversal of a conviction of one clearly proved guilty,

it is sufficient to say that decision herein far transcends the issue of Jelke's guilt or the disposition of this particular case. As one court has expressed it (*People* v. *Murray, supra,* 89 Mich. 276, 286), "It is for the protection of all persons accused of crime — the innocently accused, that they may not become the victim of an unjust prosecution, as well as the guilty, that they may be awarded a fair trial — that one rule [as to public trials] must be observed and applied to all."

Concerned as we here are only with cases not encompassed by the special provisions of section 4 of the Judiciary Law, we need not now consider the scope or extent of the rights of a defendant standing trial in one of the cases listed in that statute. (Cf., e.g., *Commonwealth* v. *Blondin, supra,* 324 Mass. 564, 571.) Nor is it necessary, in the view which we have taken of the public trial issue, to pass upon the other questions raised by defendant.

The order of the Appellate Division should be affirmed.

DESMOND, J. (dissenting). Till this case arose, it was never doubted, so far as I know, that a trial judge in New York may exclude the general public from "sex trials". As Wigmore has written (6 Wigmore on Evidence [3d ed.], p. 338), it cannot be doubted that it is within the judicial power to exclude mere spectators because of the "moral harm of satisfying pruriency in trials of certain crimes". In refusing to agree to a drastic change in that salutary and traditional rule, I can add little to the eloquent and earnest protest of the Appellate Division minority in this case, or to the clear and compelling statement of the law in *People* v. *Hall* (51 App. Div. 57 [1900]). The *Hall* case, and the predecessor of section 4 of the Judiciary Law, which it applies, are the whole of the New York law on this subject, they express an old and high tradition of judicial concern for public morality, and I see no ground or reason for refusing to follow them. The importance of the *Hall* case and of its cited authorities (Cooley on Constitutional Limitations [6th ed., published in 1890], p. 379, and Abbott's Trial Brief, Criminal Causes [1st ed., published in 1889], § 157) is that they confirm, as of sixty-five years ago, what judges and lawyers have always taken for granted. Cooley wrote that "the requirement [of a public trial] is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstand-

ing that those persons whose presence could be of no service to the accused, and who would only be drawn thither by a prurient curiosity, are excluded altogether ". Abbott put it this way: " The exclusion by the court of all persons other than those interested in the case, where, from the character of the charge and nature of the evidence, public morality would be injuriously affected, does not violate the right to a public trial ". So the Trial Judge here ordered that, while the People's case was being presented, the general public and the press should be excluded, with permission " to have present in the courtroom throughout the trial, any friends or relatives he deems necessary for the protection of his interests ". Yet, this court (to the surprise of the Bench and Bar, I am sure) is now holding that the trial court, in following the settled precedents and the old, good customs, was depriving this defendant of his fundamental right to a " public trial ". Thus it now becomes the law of New York that, in a case where filthy sexual episodes are to be described, it is the defendant alone, not the court, who has power to decide whether the prurient are to have free entrance to the show. This, I say, is in direct opposition not only to the *Hall* case (*supra*) and to the established practices of our courts in aid of public decency, but to the legislative exception (in Judiciary Law, § 4) from the " public trial " mandate, of " cases for divorce, seduction, abortion, rape, assault with intent to commit rape, sodomy, bastardy or filiation ". From the " proceedings and trials " in all such cases, says that statute, " the court may, in its discretion, exclude * * * all persons who are not directly interested therein, excepting jurors, witnesses, and officers of the court ". We, nevertheless, are here holding that the Presiding Judge in this case committed error of law in barring all spectators except " friends or relatives he deems necessary for the protection of his interests ". What has become of the judicial discretion, legislatively declared in 1879 (L. 1879, ch. 210), in section 4? And what becomes of *People* v. *Hall* (*supra*), recognized everywhere as the law of New York (see *Matter of Oliver*, 333 U. S. 257, 272)?

Nor am I able to understand the reasons or the reasoning which prompt this court to change the old rule. The majority opinion concedes that the public trial requirement is " subject

to the inherent power of the trial court to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice " (p. 63). Not only does the majority opinion concede to the trial bench that inherent and essential power, but it cites a number of situations which call for its exercise, such as insanitary conditions, overcrowding, disorder, or even the emotional disturbance of a witness. But, admitting that spectators may be dismissed because the courtroom air is physically polluted, we hold that moral pollution can never be prevented by the judge. We accept lesser reasons and reject the greater one. We say that the defendant may insist that the trial be open to every gaping sight-seer, but that a judge may not act in the interest of public morals by barring him out. And, strangest of all, we approve various implicit qualifications of the " public trial " rule, but refuse to accept as a reason for exclusion the only ground therefor which is expressly prescribed by a statute. We allow exclusions when there is no warrant therefor except general ideas of convenience and order, and forbid exclusions, on the ground of lack of statutory authority, in the very case where the legislation has authorized exclusion. And we do all this in a case where there is not even an effort to show that this defendant was prejudiced by the court's refusal to admit spectators.

The judgment should be reversed, but, because the Appellate Division order was made " on the law " the case should be remitted to the Appellate Division for its determination on questions of fact and discretion (Code Crim. Pro., § 543-a).

LEWIS, Ch. J., DYE and FROESSEL, JJ., concur with FULD, J.; DESMOND, J., dissents in an opinion in which CONWAY, J., concurs; VAN VOORHIS, J., taking no part.

Order affirmed.