## Knauer v. Dilworth

*George P. Williams, III*, for plaintiff.
*Louis G. Hill*, for defendant.
*David Berger*, for Philadelphia Daily News, Inc.

PER CURIAM, November 28, 1955.—We have before us for consideration a motion by plaintiff for a protective order in the discovery phase of the proceeding.

There is also before us for disposition a petition by the Philadelphia Daily News, Inc., for leave to intervene.

The petition to intervene may be disposed of initially. The proposed intervenor suggests that it, with all other newspapers, has a constitutional right to be present at the taking of discovery depositions. We have examined the memorandum of law submitted in behalf of the newspaper at the time of the argument, and the supplemental briefs submitted later, and are without doubt that the newspaper has no standing to intervene in this matter. A reading of Pa. R. C. P. 2327, which specifies the grounds of intervention, discloses no basis for such intervention. The newspaper will not be affected by the entry of judgment in favor of either party, it has no interest in any disposition of property, it could not have been joined as an original party and the determination of the action cannot affect any of its legally enforcible interests.

The court is permitted by Pa. R. C. P. 4012(a) (6) to make an order that "the examination shall be held with no one present except the parties to the action and their counsel". The proposed intervenor contends, however, that regardless of the rules there is a constitutionally vested right in a newspaper to have a representative present at any phase of a judicial proceeding. If there is such an unqualified right, of which we entertain serious doubt, we feel certain that it would not extend to the point that a news reporter, or any member of the general public, may demand admittance to a lawyer's office during the taking of pretrial depositions. None of the cases cited is authority for such a proposition.

The proposed intervenor has relied heavily on the case of People v. Jelke, 308 N. Y. 56, 123 N. E. 2d 769 (1954), and has quoted from it at length. The Jelke case did not deal in any way with the rights of a newspaper; the decision was addressed to the right of

a defendant in a criminal action to a public trial. The proposed intervenor, in its memorandum, has stated: "See also opinion of Judge Froessel in United Press v. Valente, 308 N. Y. 71, 123 N. E. 2d 777 (1954)." We have, therefore, seen this opinion, and find that the opinion of Judge Froessel is a dissenting opinion, that the majority opinion, written by Judge Fuld, emphatically held that no right of attendance was vested in newspaper reporters but that the right to a public trial was vested in the individual whose freedom was at stake. The court there stated, with sufficient clarity, as follows:

"In People v. Jelke (308 N. Y. 56), the question presented was whether that exclusionary order operated to deprive defendant Jelke of his right to a public trial. We held that it did. On this appeal, the issue is whether members of the public at large, including the press, also possessed an enforcible right of their own to insist that Jelke's trial be open to the public. . . .

"It is well, at the outset, to emphasize that this is not a case of free speech or freedom of the press, and that the right asserted by petitioners is not embraced within the constitutional provision guaranteeing those freedoms. (U. S. Const., 1st Amendt.; N. Y. Const., art. 1, §8.) The courts have ever been alert to strike down any infringement or limitation upon the fundamental right of the press freely to publish and distribute news and comments, . . . and we certainly have no disposition or purpose to undermine or minimize it. That right has, however, never been held to confer upon the press a constitutionally protected right of access to sources of information not available to others. Judicial proceedings are viewed as 'a public event', in the sense that 'those who see and hear what transpired can report it with impunity'. (Craig v. Harney, supra, 331 U. S. 367, 374.) But freedom of the press is in no way abridged by an exclusionary

ruling which denies to the public generally, including newspapermen, the opportunity to 'see and hear what transpired'. . . .

"Accordingly, although we have held that Judge Valente's order deprived defendant Jelke of his right to a public trial (People v. Jelke, supra, 308 N. Y. 56), our conclusion on this appeal is that it did not deprive petitioners of any right or privilege of which they may complain."

We turn then to the principal phase of this matter, wherein plaintiff seeks a protective order with regard to the taking of depositions by defendant. The order is asked for on the ground that the examination is sought in bad faith and for political purposes. However, both litigants are attorneys and officers of this court, and we must assume that they will conduct themselves in accordance with the high traditions of the Philadelphia bar. We are loath to conclude that either side or any party is guilty of bad faith. In the circumstances, and at this phase of the case, we cannot prematurely pass on questions which may be put at the time of the taking of the deposition. Those questions or the scope of the examination do not appear in the record. Defendant is said to have made public announcement of his intention to inquire into matters which plaintiff asserts are not relevant to the subject matter involved in the action. On the other hand, defendant's counsel has advised that he does not intend to ask irrelevant questions. We cannot make a determination of relevancy until we know what the questions are.

The Supreme Court, in adopting its rules, apparently provided for such contingency. Pa. R. C. P. 4007(d) provides:

"The court may by general rule provide (1) that notice under Subdivision (c) shall be filed with the prothonotary and contain a statement showing that

646

the scope and purpose of the deposition meet the requirements of Subdivision (a) ; . . ."

The courts of common pleas of this county have not so provided by any general rule. It is nevertheless clear that the principle of the rule may and should be applied in any particular case where it appears necessary that the scope and purpose of a deposition be set forth in advance, so that the court may intelligently rule thereon. Accordingly, we shall direct defendant to file with the prothonotary a statement showing the scope and purpose of the deposition sought to be taken, and we shall hereafter rule on the propriety of such inquiry in the event, in the orderly course of judicial procedure, it becomes necessary to do so.

### Order

And now, November 28, 1955, the petition of Philadelphia Daily News, Inc., for leave to intervene in the within action is dismissed, and the rule heretofore granted upon the parties upon such petition is discharged. Defendant is hereby granted leave to file with the prothonotary a notice to take plaintiff's deposition, setting forth in such notice a statement of the scope and purpose of the deposition.