Chief Judge Cooke
(concurring). The decision to close any pretrial hearing at the request of a criminal defendant is one which should be made only in extraordinary circumstances. I write briefly to indicate my views as to what the proper standards should be when such a request is made.
Preliminarily, at least for present purposes, it has been declared that the public is possessed of no inherent Sixth Amendment right to attend pretrial criminal hearings: the constitutional right to a public trial is that of the defendant (Gannett Co. v De Pasquale, 443 US 368, 99 S Ct 2898). It is unnecessary, however, to address the difficult issue of whether the public, and by inclusion the press, is vested with a First Amendment right of access to these proceedings (compare id., at pp 2914-2917 [Powell, J., concurring], with id., at p 2918 Rehnquist, J., concurring], and United Press Assns. v Valente, 308 NY 71). For in this State, the answer to this perplexing problem has been supplied by our Legislature.
Little need be said here about the benefits which redound as a result of open judicial proceedings — both to the criminal defendant and the public at large. Public proceedings protect the rights of the defendant by safeguarding against attempts to employ courts as instruments of persecution (see People v Jones, 47 NY2d 409, 413, cert den 439 US 846). And, in a larger sense, public scrutiny of all involved in the criminal justice system serves at once as a deterrent to partial justice and fosters a sense of confidence and respect on the part of the public in that system. In short, open judicial proceedings serve "to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice” (Cox Broadcasting Corp. v Cohn, 420 US 469, 492).
That this long-standing tradition of open public trials is firmly rooted in the history of this State, from colonial times until the present day, is beyond dispute (see 1 Holdsworth, History of English Law, 7-24; L 1876, ch 448, tit I, art 2, § 5; L 1879, ch 210). Thus, in clear and explicit terms, the Legislature has commanded that, "[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same” (Judiciary Law, § 4 [emphasis supplied]). That is not to say, of course, that the rule of section 4 is without exception. Indeed, the statute itself excepts from its ambit certain *446 trials whose subject matter may offend public sensibilities or unreasonably invade the privacy rights of witnesses (see People v Jelke, 308 NY 56). In other instances, public necessity itself may command closing of the courtroom doors (see, e.g., People v Hinton, 31 NY2d 71, cert den 410 US 911).
But cases such as the present one, in which the defendant requests what is, in essence, a private trial, implicate the rights of the public and the defendant to such an extent that both must be carefully delineated. No one can dispute that a party to any judicial proceeding, as a matter of fundamental fairness at the very least and from a constitutional perspective as well, is entitled to a trial in which the trier of fact considers only that evidence presented to it. Especially when a person’s liberty is at stake, courts must be ever vigilant to assure that prejudicial or spurious information does not infect the proceeding (see Sheppard v Maxwell, 384 US 333). By the same token, however, merely because a pending prosecution has aroused public interest does not lead inexorably to the conclusion that the fair trial rights of the defendant would be irrevocably prejudiced, or even jeopardized, by reports of what has transpired in pretrial proceedings. Such a conclusion would result in an unfortunate paradox: the greater the interest in a particular prosecution, the more apt the defendant to claim the possibility of prejudice and, concomitantly, the more likely that the proceeding will be isolated from public scrutiny.
It is to this situation, and others like it, that section 4 of the Judiciary Law is addressed. By its plain terms, the statute mandates that any judicial proceeding, whether it be a criminal or civil trial, an arraignment, a sentencing proceeding or a pretrial hearing, be presumptively open to the public (majority opn, at p 438; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 376, affd 443 US 368, 99 S Ct 2898). Those who seek to curtail this right bear a heavy burden of, demonstrating that there exists a high degree of probability that defendant’s right to a fair trial would be jeopardized to such an extent that dissemination of prejudicial pretrial publicity would result in reversal of any conviction thereafter obtained. In making this determination, moreover, the court must always bear in mind that an open judicial proceeding is a necessary correlative to a free and open society. Thus, before any proceeding is closed, the proponent of the closure order must establish that there exist no other less restrictive protective *447 measures available to assure a fair trial. In short, the right of the public to attend judicial proceedings ends only where the defendant’s right to trial by an impartial jury is unalterably threatened.
Pretrial publicity, in and of itself, does not often endanger the right of a criminal defendant to receive a fair trial (see, e.g., Murphy v Florida, 421 US 794). As the majority pointedly notes and as this case graphically illustrates, information disclosed at many pretrial proceedings will have no bearing on what is subsequently revealed at trial (at pp 439-442). Indeed, from a purely analytical viewpoint, even pretrial suppression hearings pose little danger to a defendant’s right to a fair trial. For at these hearings it is the circumstances surrounding the making of a statement or the seizure of evidence that is principally in issue rather than the substance of the statement or nature of the evidence itself.
None of this is meant to detract from the duty of the trial court to safeguard the fair trial rights of a defendant. It would be extremely naivé to maintain that pretrial publicity may never transgress a defendant’s Sixth Amendment rights (e.g., Sheppard v Maxwell, 384 US 333, supra; Irvin v Dowd, 366 US 717). The nature and extent of the information already disseminated to the public is one factor to be considered by the court in deciding whether to close a hearing. The proponent of the motion must demonstrate the impact this information will have on the jury pool. This, of course, involves considerations of the size of the pool, the extent of media coverage and the effect of that coverage on the public at large. But even if all of these factors would lead to the conclusion that reversal of any conviction is all but inevitable, no closure order should be entered until all possible alternatives to dispel prejudice are explored. These include, of course, change of venue, continuance, venire, sequestration of the jury* and an adequate number of peremptory challenges to name but a few (see ABA Project on Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press, Standard, § 8-3.2 (App Draft, 1978); Nebraska Press Assn. v Stuart, 427 US 539, 562-565; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 387 [dissenting opn], supra). It is only where the proponent of the closure motion establishes that these alternatives, whether *448 individually or in combination, do not diminish the strong likelihood that open judicial proceedings will result in reversal, may the right of the public to attend the sitting of "every court within this state” (Judiciary Law, § 4) be overridden.

 For example, the court may approve a procedure whereby jury selection and sequestration occurs prior to a suppression hearing.