■ SALVATORE FIORENTI et al., Respondents, v CENTRAL EMERGENCY PHYSICIANS, PLLC, et al., Appellants. [835 NYS2d 345]—

In an action, inter alia, to recover damages for breach of contract and violation of the Labor Law, the defendants appeal from a judgment of the Supreme Court, Nassau County (Dana, Ct. Atty. Ref.), entered November 1, 2004, which, after a nonjury trial on the issue of damages, is in favor of the plaintiff Salvatore Fiorenti and against the defendant Central Emergency Physicians, PLLC, in the total sum of $336,568.97, and is in favor of the plaintiff David Delman and against the defendant Central Emergency Physicians, PLLC, in the principal sum of $322,759.66.

Ordered that the appeal by the defendant Theodore F. Packy is dismissed, as that defendant is not aggrieved by the judgment appealed from (*see* CPLR 5511); and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that one bill of costs is awarded to the respondents.

Following a determination that the defendant Central Emergency Physicians, PLLC (hereinafter CEP), was liable to the plaintiffs for certain bonuses earned while the plaintiffs were employed by CEP as emergency room physicians, the parties appeared before a Court Attorney Referee for a trial on the issue of damages. At the outset of that proceeding, the defendants' attorneys objected to the physical location of the trial, contending that it denied the defendants the right to a public trial because of its alleged inaccessibility to the public. While the record made by the attorneys on the issue is far from clear, it appears that the courtroom was in or near a Judge's chambers on the second floor of the courthouse, accessible both by elevators and stairs, thus necessitating that attendees "go through security" on both the first and second floors. The attorneys more specifically noted that upon arriving on the second floor, they were required to walk through a door marked "jurors only" and into a waiting

area, where they would "phone in to security personnel to be cleared" and "be buzzed through" to the courtroom.

The Referee, while acknowledging that the right to a public trial clearly was applicable to the damages proceedings, disagreed with the conclusion of the defense attorneys, observing that "my courtroom is certainly always open and available to public observers." The plaintiffs' counsel similarly noted that "[t]his is a public forum. The public is readily permitted to attend and witness the hearing," to which the Referee responded "[y]es, to my knowledge."

The Referee further went out of his way to accommodate any particular individuals who defense counsel might want present, insisting that they were welcome to attend and repeatedly offering to "go and fetch them" if necessary. Indeed, the Referee stated that nonlitigants had observed proceedings at that location on previous occasions, and typically were brought in by the attorneys to watch the proceedings because of their interest in litigation. In response, the defendants' attorneys indicated that they actually had no specific individuals in mind, but instead were concerned that law students and "court buffs" might not have the opportunity to attend the proceedings, a circumstance which counsel claimed caused them "grave concern." The defense attorneys then faulted the administrator of the court for what they perceived to be the public inaccessibility of the location, proclaiming that "the Courts should reinstate that the Courts are open to the public and wherever it can be done for security concerns that the trials are still open to the American public." The Referee responded that he was powerless to change the location of the proceeding, and suggested that defense counsel "write a letter to that effect to the Administrative Judge." Significantly, notwithstanding this suggestion and defense counsels' characterization of the trial as "a private proceeding," those attorneys never pursued the matter with the Administrative Judge. Similarly, they never elicited any evidence that the location of the damages trial was not published and posted, or that this information was not otherwise readily available to any member of the public who might enter the courthouse and inquire regarding the matters currently being tried in the building. Likewise, they came forward with nothing even suggesting that court employees or security personnel ever dissuaded anyone from attending the trial, nor did they produce any evidence that any person actually had been denied access to the proceedings. In fact, at the ensuing trial, a person who was not known to either the Referee or counsel "came in [to the courtroom] and looked and decided to leave."

The trial culminated in a judgment awarding damages in favor of the plaintiffs and against CEP. On this appeal, CEP contends in cursory fashion that the alleged inaccessibility of the Referee's courtroom, caused by the security measures followed at that location, violated its right to a public trial. We disagree.

The right to a public trial, usually discussed in the context of the Sixth Amendment's application to criminal proceedings (*see e.g. Waller v Georgia,* 467 US 39 [1984]; *People v Jones,* 96 NY2d 213 [2001]), is also implicated by the First Amendment and various statutes. In New York, Judiciary Law § 4 provides in relevant part that "[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same," which language "undoubtedly has the effect of extending the guarantee of public trial to all cases, whether civil or criminal" (*People v Jelke,* 308 NY 56, 63-64 [1954]). The right is not absolute, however, and "has . . . never been viewed as imposing a rigid, inflexible straitjacket on the courts" (*People v Jelke, supra* at 63). Hence, the right to a public trial may be circumscribed by competing interests, such as the need to preserve order in the courtroom, to protect the rights of participants, to prevent overcrowded, disorderly, or unhealthy conditions, and to further the administration of justice (*see People v Jelke, supra* at 63; *People v Cosentino,* 198 AD2d 294, 295 [1993]).

Contrary to CEP's contention, the record in this case wholly fails to support the conclusion that the mere physical location of the courtroom itself denied members of the public access to the proceedings (*see e.g. People v Knapp,* 113 AD2d 154, 159 [1985], *cert denied* 479 US 844 [1986] [right to public trial not denied where trial was held in a church hall because renovations were being conducted at courthouse; although the church hall was a private building, "nothing in the record indicates that public access was restricted during the trial"]; *cf. People v Rose,* 82 Misc 2d 429, 431 [1975] [the use of a schoolhouse as a courthouse violated the right to a public trial because a school building "is not public in the sense that any person may enter therein . . . [but] is restricted to teaching . . . and unauthorized presence in a school building is loitering"]; *People v Schoonmaker,* 65 Misc 2d 393, 396 [1971] ["the constitutional mandate that court sittings be public exclude[s] a police barracks as a courtroom"]). Indeed, there is nothing other than defense counsels' speculation to support the conclusion that members of the public were prevented from attending the damages trial.

Similarly, we find unpersuasive CEP's contention that the security procedures followed in this case were so onerous that

they effected an unlawful closure of the Referee's courtroom. "A denial of the public trial right requires an affirmative act by the trial court excluding persons from the courtroom, which in effect explicitly overcomes the presumption of openness" (*People v Peterson,* 81 NY2d 824, 825 [1993]). Here, the security measures in place, which consisted of undergoing a routine security check upon entering the first floor of the courthouse and then calling a security officer on the second floor in order to be "buzzed through" to the courtroom, posed no greater impediment to public access than the physical and electronic searches which have been upheld as legitimate and valid procedures designed to ensure general safety in all courthouses (*see Matter of Bozer v Higgins,* 204 AD2d 979 [1994]). Moreover, the suggestion by CEP that the security procedure for gaining access to the Referee's courtroom had a chilling effect on potential spectators is unavailing (*see e.g. People v Mack,* 272 AD2d 557 [2000] [stationing of court officer outside courtroom did not have intimidating effect upon prospective audience members]; *People v Perez,* 245 AD2d 71 [1997] [claim that security checkpoint had intimidating effect on potential spectators was completely speculative, and there was no evidence that anyone was denied entry to proceedings]).

In sum, although the objections of defense counsel to the alleged "private" nature of the proceedings was long on rhetoric, it was decidedly short on actual proof. In this regard, while we share the dissent's view that "[p]ublic access to courtrooms in this State is by right, not by invitation," we find no basis whatsoever in the record to support its conclusion "that members of the public, other than those the parties might choose specifically to name and invite, had no access" to the instant trial. Rather, the record unequivocally establishes that the proceedings were open to the public, and even that a potential spectator did look in on the proceedings, albeit briefly, and elected not to remain. Similarly, counsel came forward with no evidence that the trial was conducted in secrecy, or was hidden away from the public, or that a single individual was discouraged from attending or denied access to the proceedings. We simply are unwilling to join the dissent in assuming, without record support, that such was the case. Additionally, the mere fact that the Referee offered to bring in any potential spectator whose presence defense counsel requested does not fairly give rise to the inference that the proceedings were so insulated from the outside world as to lose their clearly "public" character.

The dissent further observes that the right to a public trial should not be sacrificed at the altar of "administrative conve-

nience." Again, however, while we agree with the stated principle, we find no basis for its application to these facts. There simply is no evidence that the situating of a courtroom on the second floor of a courthouse, in or near a Judge's chambers, and into which an attendee must be "buzzed" by security personnel, is so manifestly inaccessible as to violate the right to a public trial. Rather, the evidence indicates that the location of this trial, which was seemingly more the product of administrative necessity than "administrative convenience," was not so remote or impenetrable as to impede access by any member of the public who might want to attend. Indeed, there is no proof that any lack of public attendance at the instant damages trial was attributable to any obstacles created by the location of the proceedings or the security measures employed in connection therewith. CEP has completely failed to present evidence in support of its claim to the contrary.

CEP's further contention that the Supreme Court improperly determined its liability under the Labor Law was raised on a prior appeal of this matter, and this Court determined that appellate review of the issue had been waived (*see Fiorenti v Central Emergency Physicians, PLLC,* 19 AD3d 539, 539-540 [2005]). Accordingly, this contention is barred by the doctrine of law of the case (*see Matter of Independence Party State Comm. of State of N.Y. v Berman,* 28 AD3d 556 [2006]; *EIFS, Inc. v Morie Co.,* 298 AD2d 551 [2002]).

CEP's remaining contention is without merit. Mastro, J.P., Santucci and Krausman, JJ., concur.

Fisher, J., dissents and votes to reverse the judgment and order a new trial on the issue of damages, with the following memorandum:

Following a finding in the plaintiffs' favor on the issue of liability, the parties gathered in the courthouse chambers of a Court Attorney Referee for a trial on the issue of damages. At the outset of proceedings, counsel for the defendants stated: "With regard to the location of this trial, it has been my experience . . . to have . . . people interested in cases able to observe the proceedings . . . Today we went through security downstairs and then we had to go through security on this floor and be buzzed through a second floor entrance to what appears to be your chambers for purposes of this case without any public participation or public exposure of the trial . . . [T]his is the first time in my career . . . that I have been taken into a secure location to begin a trial without any public exposure of the trial, and on behalf of my clients I have to object to the continuation of a hearing without the availability of the public to observe the

proceedings . . . [A]ll public proceedings, all trials should continue to be public proceedings despite any security cautions that we must take because of recent events [Proceedings here began on May 17, 2004] . . . [T]he entrance procedures are such in coming up to the second floor either through a staircase or an elevator one has to go through [a door marked 'Jurors only'] and then choose a separate door to go to a waiting area and then phone in to security personnel to be cleared . . . [t]o come through this area which is a secure area to come into this location . . . The wonderful thing about our Court system is every courtroom in the United States is open to the public . . . This particular courtroom is not and that gives me pause to make this point on the record that however the circumstances came about that we are now going to try a case without public exposure, it causes me grave concern."

Cocounsel for the defendants added: "[The] objection is to the private nature of these proceedings . . . No one can access the hallway . . . This is a very private area."

The Referee responded in pertinent part as follows: "Despite my sympathies to the two of you, certain decisions have been made by the Administrative Judge . . . to so structure the courthouse this way. I am powerless, I cannot amend that.

"If there were specific people you want to invite here in the courthouse, I would tell you go and fetch them straight away. I can't change all that. . . .

"I'm going to dispatch the subject simply by saying I am powerless to change.

"If there [were] some specific persons, I would gladly invite them here and I am in agreement that these are and should be public affairs and I'm going to suggest that you write a letter to that effect to the Administrative Judge."

The damages trial proceeded and ultimately resulted in the judgment now before us for review. The defendants appeal, arguing, inter alia, that reversal is required because the trial was conducted in what amounted, in effect, to a closed courtroom.

In affirming, the majority writes in part: "[T]he record unequivocally establishes that the proceedings were open to the public." I take a very different view of the record. To me, it plainly establishes that members of the public, other than those the parties might choose specifically to name and invite, had no access to the chambers in which the trial was being conducted. Moreover, although the Referee did, as the majority indicates, say to counsel that "my courtroom is certainly always open and available to public observers," he continued in the very same

sentence to say "and if you have specific ones available in the courthouse now, I invite you to go and fetch them."

Public access to courtrooms in this state is by right, not by invitation. Section 4 of the Judiciary Law provides: "The sittings of every court within this state shall be public, and every citizen may freely attend the same, except that in all proceedings and trials in cases for divorce, seduction, abortion, rape, assault with intent to commit rape, criminal sexual act, bastardy or filiation, the court may, in its discretion, exclude therefrom all persons who are not directly interested therein, excepting jurors, witnesses, and officers of the court." As the Court of Appeals wrote more than a half-century ago, the statute "undoubtedly has the effect of extending the guarantee of public trial to all cases, *whether civil or criminal*, with the exceptions there set forth" (*People v Jelke*, 308 NY 56, 63-64 [1954] [emphasis supplied]). Indeed, "historically both civil and criminal trials have been presumptively open" (*Richmond Newspapers, Inc. v Virginia*, 448 US 555, 580, n 17 [1980]). Moreover, although disputes between private parties are not always matters of profound public concern, the manner in which our justice system handles them certainly is. In this very real sense, public access to court proceedings promotes accountability of both the system and those who serve in it. And while Judiciary Law § 4 cannot be read to impose an "inflexible straitjacket" on the court's inherent authority "to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice" (*People v Jelke, supra* at 63), neither can its mandate be cast aside merely as a matter of administrative convenience.

Contrary to the views expressed by the majority, the fact that "[t]he Referee . . . went out of his way to accommodate any particular individuals who defense counsel might want present" and "offered to bring in any potential spectator whose presence defense counsel requested" does not establish that the proceedings were open within the meaning of Judiciary Law § 4. In fact, it proves just the opposite. The Referee's on-the-record statements that he was "powerless" to address defense counsel's concerns, and his invitation to counsel to "go and fetch" anyone they might wish to have present, provide clear evidence that the trial in this case was not open to the public.

The majority also suggests that there can be no violation of Judiciary Law § 4 absent proof that a member of the public actually tried to gain access to the proceedings and was turned away. I respectfully disagree. The fact that no one tries to open a locked door does not make the door any less locked (*cf.*

*Peterson v Williams,* 85 F3d 39, 44 n7 [1996], *cert denied* 519 US 878 [1996]).

In sum, because I conclude that the trial was held in violation of Judiciary Law § 4, and because the error was fully preserved for appellate review, I respectfully dissent and cast my vote to reverse the judgment and order a new trial on the issue of damages. Inasmuch as I find that reversal is required because the statute was violated, I need not reach any claim that the conduct of the trial in the Referee's chambers also contravened First Amendment principles.